UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| HILLTOP CHURCH OF THE NAZARENE, § | | |
|    *Plaintiff*, § | | |
| § | | |
| vs. § | | CIVIL ACTION NO. 6:21-CV-00322-JCB |
| § | | |
| CHURCH MUTUAL INSURANCE § | | |
| COMPANY § | | |
|    *Defendant*. § | | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff HILLTOP CHURCH OF THE NAZARENE ("Hilltop"), and files this its First Amended Complaint against CHURCH MUTUAL INSURANCE COMPANY, and, in support of its causes of action, would respectfully show the Court the following:

### I. PARTIES

1. Plaintiff, HILLTOP CHURCH OF THE NAZARENE, owns the properties made the basis of this suit located at: 10818 University Blvd., Tyler, Texas 75707 in Smith County, Texas (the "Property").

2. Defendant, CHURCH MUTUAL INSURANCE COMPANY ("Defendant") is a foreign entity currently engaged providing insurance in this State during all relevant times to this lawsuit.

### II. JURISDICTION AND VENUE

3. This Honorable Court has personal jurisdiction over Defendant because at all times relevant hereto it provided insurance coverage in the State of Texas and Plaintiff's causes of action arise out of its in-state business activities.

4. Defendant, has admitted this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. At the time this lawsuit was filed and to this day, Plaintiff pays property taxes

on the Property in question in Smith County, Texas. Plaintiff is therefore a citizen of Texas for diversity purposes. Defendant has alleged it is a corporation formed under the laws of the State of Wisconsin with its principal place of business in Wisconsin.  Defendant has appeared and answered in this Court.

5. Venue is proper in the Eastern District of Texas, because the property at issue is located in this district, the loss occurred in this district, the claims asserted herein arose from one or more acts and/or omissions that occurred in this district, and Defendant has appeared and filed its Answer with this Court. More specifically, the property is located in the Tyler Division of the Eastern District of Texas.

### III.     FACTUAL BACKGROUND

6. Hilltop entered into an agreement with Defendant to pay Defendant premiums in exchange for insurance coverage protecting Hilltop's Property.

7. The agreement was drafted by Defendant and assigned Policy Number 0118133-02-696239 (the "Policy"). The Policy's effective date was from December 2, 2018 to December 2, 2019 (referred to as the "Policy Period").

8. The Policy covers damage to property as a result of hail, wind, and rain.

9. During the Policy Period, a wind, hail, and rain storm hit Smith County, Texas damaging Plaintiff's Property.

10. The storm produced hail at least one inch in size and wind speeds up to 70 miles per hour that hit the Property.

11. As a result of the wind and hail storm, the Property suffered damage to the roof shingles, the metal vents, the siding, windows, gutters and more.

12. The wind hit the Property with such force that shingles were lifted up and pushed back causing them to fold over themselves and severely weakening them. The wind additionally displaced parts of the building's exterior siding and some parts were dislodged from place and blown away. Some areas of the roof were damaged by wind-borne debris that struck the roof leaving gouges to shingles and areas of sever granular loss.

13. In many areas, rows of shingles were damaged where wind had lifted the shingles upwards and rip the bonded shingles apart. The wind even tore shingles clean off the roof in some areas leaving the roof decking exposed.

14. As a result, Hilltop was forced to initially cover the damaged areas with tarps in an attempt to prevent further damage and eventually forced to make temporary repairs.

15. The hail that fell at the Property caused additional damage to the Property when hail struck the roof, the metal roof top vents, windows at the Property, and the gutters and downspout.

16. In addition to the exterior damage the storm caused, the storm also created openings in the roof that allowed water to enter into the roof system and cause interior water damage.

17. Hilltop subsequently filed a claim under the Policy on or about April 28, 2019 due to the exterior damage and the interior water damage from the storm.

18. Defendant assigned the claim, claim number 1393840 (referred to as the "Claim").

**A.     Investigations, Reports, and Denial.**

19. Defendant hired Leading Edge Claims Services to handle the Claim as the adjuster and Mike Hickey was assigned the Claim.

20. Mike Hickey ("Mr. Hickey") visited the Property on September 26, 2019, and walked around the exterior of the Property, photographed the roof, and quickly viewed the inside of the building.

21. Mr. Hickey ignored obvious damage across the Property though careful review of his photographs show displaced and missing exterior pieces, and the areas of the roof where the shingles had been torn off and blown back, gouges to shingles in the roof, areas of severe granular loss, and damage caused by hail to the gutters, window screens, and metal rooftop vents.

22. Despite the clear and obvious damage he observed, Mr. Hickey concluded there was no hail damage to the roof due to his feigned inability to find hail.

23. In reality, the roof shingles were covered in circular hail marks that showed damage to the roof shingles caused by hail in the area where the shingles had lost their protective granular coating.

24. Mr. Hickey attempted to blame the granular loss on excessive heat—a mere pre-text to deny the claim—but never addressed the five turbine heat vents across the top of the roof that vent hot air from the attic space directly below the shingles. Mr. Hickey never found that vents were not properly functioning.

25. Additionally, Mr. Hickey reviewed the wind damage at the Property and admitted that some of the shingles were damaged by wind, but still refused to admit the roof was damaged by the storm at issue.

26. Mr. Hickey never provided an explanation for why wind was not the cause of damage to the majority of the damaged shingles and merely makes conclusory statements about the roof being toward the end of its life service. But in the same report Mr. Hickey also states that the roof was in fair condition.

27. Mr. Hickey's observed damage from the storm and even attributes some of the damage to the storm. However, Mr. Hickey in the same breath states that the majority of the damage is due

to another cause but fails to exclude wind as the cause and provides unreasonable logic and insufficient evidence as to other causes that might have damaged the Property.

28. On October 14, 2019, following Mr. Hickeys visit, Defendant partially denied Hilltop's Claim and paid only $10,726.69 for damages from the March 14, 2019 storm.

29. Hilltop protested the partial denial and as a result, Defendant hired EFI Global to review the damage to the Property and Daniel J. Hillner ("Mr. Hillner") was given the assignment.

30. Mr. Hillner visited the Property on April 1, 2020 and performed the same walkaround as Mr. Hickey.

31. EFI Global's report is deficient in many way and the first is the inadequate research that was performed regarding the weather data.

32. EFI Global's own report states that hail as small as three quarters of an inch in diameter can damage and bruise composition shingles like the ones at the Property. But EFI then only only gathers weather data from one source that states there was no hail larger than three quarters of an inch in diameter at the subject Property. However, the National Oceanic and Atmospheric Administration recorded a storm event on March 14, 2019 that shows hail at least one inch in size fell in the area around the Property and therefore the storm did produce hailstone of large enough size to damage the composition shingles at the Property.

33. EFI Global's report is also deficient because it is almost a regurgitation of Mr. Hickey's findings and reasoning.

34. For example, EFI Global's report states in nearly identical language to Mr. Hickey's, that the majority of the shingles were not damage by wind or hail and instead that the reason for the protective granular loss was due to excessive heat caused by inadequate venting.

35. But again, EFI Global's report never mentions testing the five large rooftop turbine vents and never even states that it was told the vents were not functioning properly. Further, EFI does not report climbing into he attic under the roof to test the temperature for elevated temperature levels and instead relies on conclusory statements without any supporting evidence like Mr. Hickey.

36. Additionally, EFI Global's own report also does show photos of shingles with circular impact marks with exposed fiber but EFI Global again discards this as evidence of hail damage without any reason as to how it excluded the damage, and instead attributes the granular loss to excessive heating.

37. Finally, EFI Global's report entirely fails to address the wind damage to the Property. Despite high wind speeds from the storm at issue, EFI Global's report is entirely devoid of wind research and does not even address the wind damage or the extent of wind damage to the Property.

38. The roof of the Property was damaged by wind when the wind blew shingles up and folded them back and even tore them off in some areas. Additionally, some roof shingles have gouges in them from where wind-borne debris hit the shingle.

39. Mr. Hickey dismissed the damage as wear and tear as a mere pre-text, again providing no evidence or explanation despite already attributing some damage to wind, but EFI Global completely fails to address the wind damage to the Property.

40. EFI Global produced its deficient and unreasonable report to Defendant on April 16, 2020 and upon reviewing the inadequate report Defendant relied on it and again denied the remainder of Hilltop's Claim on April 20, 2020.

41. Further, Defendant and its adjusters assigned to the Claim failed to include all of the damages sustained at the Property by not correctly attributing the interior damage to the hail and undervaluing the damages observed during the inspection.

42. Defendant and its adjusters' unreasonable investigation led to the underpayment of Hilltop's Claim.

43. Moreover, Defendant and its adjusters and investigators performed an outcome-oriented investigation of Hilltop's Claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the property.

**B.    Policy Compliance**

44. Hilltop fully complied with all requirements under the Policy to properly notify the Defendant of the losses to its covered Property.

### IV.    CAUSES OF ACTION

**A.    Breach of Contract**

45. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 44 of this complaint.

46. Defendant entered into the Policy with Hilltop.

47. Hilltop's Property sustained damage during the Policy Period as a result of rain, wind, and hail which is a covered cause of loss under the Policy.

48. Defendant breached the terms of the Policy by wrongfully underpaying the Claim. Defendant did not fully account for all of the damage at the Property as it did not include the full amount of hail and wind damage to the roof and failed to attribute the interior damage to the wind and hail that damaged the roof's water shedding capabilities.

49. Defendant did not properly pay the full benefits that Hilltop was owed under the contract. Defendant paid substantially less than the amount it costs to fully repair and replace Hilltop's property and return it to its pre-loss condition.

50. As a result of Defendant's breach of the Policy, Hilltop has sustained actual damages and has incurred reasonable and necessary attorney's fees to date.

**B.    Insurance Code Violations**

51. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 50 of this Complaint.

*Prompt Payment of Claims Statute*

52. As set forth above, Plaintiff was insured under the Policy during the Policy Period.

53. During the Policy Period, a wind and hail storm swept through Smith County, Texas and damaged Hilltop's Property.

54. As a result, Hilltop gave proper notice of a claim under the Policy to Defendant.

55. Defendant is under an obligation to promptly pay Plaintiff's claim.

56. Defendant delayed payment of Plaintiff's claim for a time exceeding the period specified by statute by underpaying damages covered under the Policy and wrongfully denying damages clearly covered from the Policy. Defendant paid merely $10,726.69 despite Hilltop's roof being substantially damaged by the hail and wind storm that has resulted in leaks throughout the Property.

57. Defendant failed to pay the full claim amount and delayed the payment on covered damage to the property.

58. To date, Defendant has not tendered payment for all of Hilltop's damages arising out of its insurance claim with Defendant.

59. The failure of Defendant to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Article 542.058 of the Texas Insurance Code.

60. As a result of the insurance code violations listed above, Hilltop, in addition to Hilltop's claim for damages is entitled to statutory interest and attorneys' fees as set forth in Article 542.060 of the Texas Insurance Code.

*541 Insurance Code Violations*

61. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

62. Plaintiff is considered a "person" under the Texas Insurance Code § 541.002. Likewise, Defendant is engaged in the business of insurance and is thus a "person" under § 541.002.

63. Defendant violated § 541.051 of the Texas Insurance Code by making statements misrepresenting the terms and/or benefits or advantages of the policy and by using a name or title of a policy or class of policies that misrepresents the true nature of the policy or class of policies.

64. Defendant violated § 541.060:

    (a) *541.060(a)(1)-misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue*.

65. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 44 of this Complaint.

66. Defendant misrepresented the following:

    i. the actual cause of the interior damages;

    ii. that hail did not damage the roof of the property;

    iii. that excessive heat was the cause of the protective granular loss and not the march 14, 2019 wind and hail storm;

    iv. that hail that fell at the property was not large enough to damage the shingles; and

  v.  the reasonable and necessary costs to make repairs.

67. Each of these acts and omissions, singularly or in conjunction with the others, constituted a violation of Texas Insurance Code § 541.060(a)(1), which proximately caused Plaintiff's damages.

  (b) *§541.060(a)(2)-failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear*.

68. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 67 of this Complaint.

69. Defendant failed to attempt in good faith to effectuate a prompt, fair and equitable settlement by:

  i. failing to properly investigate the interior damage;

  ii. misrepresenting to Plaintiff that the interior damage was not due to rain water entering the Property from a wind or hail created opening;

  iii. ignoring and/or attempting to discredit findings that show hail impact damage and wind damage to the roof shingles despite obvious evidence;

  iv. failing to properly research the weather events in and around the date of loss by not looking into more than one source of data and completely excluding wind research from its analysis; and

  v. failing to write an estimate that includes all storm-created openings and damages sustained by the roofing system.

70. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(2), which proximately caused Plaintiff's damages.

> (c)   *541.060(a)(3)-failing to promptly provide Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim*.

71.   Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 70 of this Complaint.

72.   Defendant failed to promptly provide Hilltop a reasonable explanation of the basis for Defendant's underpayment of the claim.

73.   Defendant's decision letter was based solely on its outcome-oriented report.

74.   Both Mr. Hickey's report and EFI Global's report failed to properly exclude wind as the cause of the extensive damage to the roof and instead made conclusory statements that excessive heat was the cause of the majority of the roof damage.

75.   However, neither Mr. Hickey or EFI Global actually investigated the five large roof turbines that expels heat from the attic beneath the roof or accessed the attic to test whether there were elevated temperatures.

76.   Instead, both Mr. Hickey stated excessive heat was the cause with no evidence to support such a conclusion. This also nullified their reasoning as to why circular areas of granular loss were not caused by hail.

77.   Further, both Mr. Hickey and EFI Global failed to explain how it was able to exclude wind as the cause of the majority of the damage to the roof despite have already attributed some roof damage to wind.

78.   As a result, Defendant failed to explain how it arrived at the damage amounts paid and failed to explain why a full roof replacement was not needed as a result of the storm event despite hail damage being recorded throughout the Property.

79. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(3), which proximately caused Plaintiff's damages.

    (d)     ***541.060(a)(4) by failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff.***

80. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 79 of this Complaint.

81. Defendant failed within a reasonable time to affirm or deny coverage by taking over a year to render a decision letter. The initial claim was made on April 28, 2019, and the first inspection took place on September 26, 2019. There is no reason why Defendant could not issue a decision letter prior to April 20, 2020.

82. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(4), which proximately caused Plaintiff's damages.

    (g)     ***541.060(a)(7) by refusing to pay Plaintiff's Claim without conducting a reasonable investigation with respect to the Claim***.

83. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 56 of this Complaint.

84. Defendant refused to pay Plaintiff's claim without conducting a reasonable investigation by:

    i.     failing to properly investigate the interior damage;

    ii.     misrepresenting to Plaintiff that the interior damage was not due to rain water entering the Property from a wind or hail created opening;

    iii.     ignoring and/or attempting to discredit findings that show hail impact damage and wind damage to the roof shingles despite obvious evidence;

  iv. failing to properly research the weather events in and around the date of loss by not looking into more than one source of data and completely excluding wind research from its analysis; and

  v. failing to write an estimate that includes all storm-created openings and damages sustained by the roofing system.

85. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(7), which proximately caused Hilltop damages.

86. Defendant violated § 541.061 by making an untrue statement of material fact when asserting the interior water damage was not caused by hail or wind damage and that excessive heat was the cause of Damage. Defendant also violated § 541.061 by making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact by not attributing excessive heat in the attic as the cause of roof damage without ever investigating the venting system or the inside of the attic itself.

**C. DTPA Violations**

87. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 86 of this Complaint.

88. At all material times hereto, Hilltop was a consumer who purchased insurance products and services from Defendant.

89. Defendant is a "person" as defined by § 17.45 of the Texas Business and Commerce Code.

90. Defendant violated the Texas Deceptive Trade Practices Act by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by the DTPA § 17.50(a)(1)(3) in that this Defendant took advantage of Hilltop's lack of knowledge, ability, experience, and capacity to a

grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Insurance Code.

91. Defendant's estimates were not reasonable as the estimates were the result of an outcome-oriented investigation. Defendant owed Hilltop the full benefits under the policy for a covered loss from wind and hail damage.

92. Defendant's investigation disregarded obvious hail damage found on the roof where hail hit the roof leaving circular hail marks and bruising the shingles.

93. Additionally, Defendant improper and unconscionably attributed roof damage to excessive heat in the attic without ever investigating the roof venting system or accessing the attic to test the temperature and thereby excluding other causes.

94. As a result, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code § 541.152(a)–(b) and reasonable and necessary attorney's fees as allowed by § 17.50 of the Business and Commerce Code.

**D.     Breach of The Duty of Good Faith and Fair Dealing**

95. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 68 of this Complaint.

96. Plaintiff and Defendant entered into a valid and enforceable insurance policy.

97. Defendant owed Plaintiff the common law duty of good faith and fair dealing.

98. Defendant breached the common law duty of good faith and fair dealing by:

   i.   failing to properly investigate the interior damage;

   ii.  misrepresenting to Plaintiff that the interior damage was not due to rain water entering the Property from a wind or hail created opening;

      iii.      ignoring and/or attempting to discredit findings that show hail impact damage and wind damage to the roof shingles despite obvious evidence;

      iv.      failing to properly research the weather events in and around the date of loss by not looking into more than one source of data and completely excluding wind research from its analysis; and

      v.      failing to write an estimate that includes all storm-created openings and damages sustained by the roofing system.

99. Upon information and belief, Defendant's actions were performed without due regard or care for the Claim process and were done intentionally and/or with gross negligence.

100. Defendant was aware at all times that its actions would result in the denial and/or underpayment of Hilltop's Claim, and cause extraordinary harm associated with Hilltop's Claim.

101. As a result of Defendant's aforementioned acts and omissions, Hilltop sustained actual damages.

### V.    ATTORNEY'S FEES

102. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 101 of this complaint.

103. Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorney's fees and expenses through trial and any appeal.

104. Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Texas Civil Practice & Remedies Code §§ 38.001–38.003 because Plaintiff is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

105.  Plaintiff further prays that it be awarded all reasonable attorney's fees incurred in prosecuting its causes of action through trial and any appeal pursuant to §§ 541.152 and 542.060 of the Texas Insurance Code.

106.  Plaintiff further prays that it be awarded all reasonable and necessary attorney's fees incurred in prosecuting Plaintiff's DTPA causes of action above pursuant to § 17.50(d).

## VI.  CONDITIONS PRECEDENT

107.  All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.

## VII.  DEMAND FOR JURY

108.  Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff herein requests a trial by jury.

## VIII.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff herein prays that, upon final hearing of the case, it recover actual damages, statutory interest and treble/exemplary damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Plaintiff be awarded attorney's fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

*/s/ Vincent P. Circelli*
Vincent P. Circelli
State Bar No. 24058804
vcircelli@dcclawfirm.com
Preston J. Dugas III
State Bar No. 24050189
pdugas@dcclawfirm.com

**DUGAS, CHEEK & CIRCELLI, PLLC**

                                            1701 River Run, Suite 703
                                            Fort Worth, Texas 76107
                                            Telephone:     (817) 945-3061
                                            Facsimile:      (682) 219-0761

                                                **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that on February 11, 2022, a true and correct copy of the foregoing was served on all counsel of record pursuant to Federal Rule of Civil Procedure 5(b), as follows:

*via e-service*
Ron Burnovski
rburnovski@zelle.com
G. Brian Odom
bodom@zelle.com
Lindsey P. Bruning
lbruning@zelle.com

**ZELLE LLP**
901 Main Street, Suite 4000
Dallas, Texas 75202
Telephone: (214) 742-3000
Facsimile:  (214) 760-8994

                                            */s/ Vincent P. Circelli*
                                            Vincent P. Circelli