IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| HILLTOP CHURCH OF THE NAZARENE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 6:21-cv-00322-JCB |
| | § § | |
| CHURCH MUTUAL INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

### DEFENDANT CHURCH MUTUAL INSURANCE COMPANY'S
### MOTION TO EXCLUDE OPINIONS OF JAMES MAXWELL JUDGE

Pursuant to Federal Rules of Evidence 104 and 702, Defendant Church Mutual Insurance Company ("Church Mutual") respectfully moves this Court to exclude the opinions of James Maxwell Judge ("Judge") regarding the cause of Plaintiff Hilltop Church of the Nazarene's ("Plaintiff" or "Hilltop") property damage because his opinions fail to meet the reliability standards required by Rule 702 and the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592−93 (1993).

### I.      SUMMARY OF MOTION

This lawsuit arises out of Plaintiff's insurance claim for damage to Hilltop's property located at 10818 University Drive, Tyler, Texas 75707 (the "Property") allegedly caused by hail and/or wind on or about March 13, 2019. Plaintiff retained Judge to offer expert opinions on the cause of damage to the Property resulting from the alleged March 13, 2019 storm. Judge concludes—without a reliable basis or methodology—that "[t]he damage to this property is consistent with the Storm Event dated 3/13/19, to the exclusion of other potential storm events . .

. ."[1]  To the extent that Judge concludes that the March 13, 2019 storm (the "Storm") caused the damage to the Property, Judge's opinions fail to meet the reliability and relevance standards required by Rule 702 and the Supreme Court.[2]

*First*, Judge's causation opinion that the Storm caused the damage to the Property is not based on sufficient underlying facts and data. To that end, Judge only considered weather data from January 1, 2019 through December 31, 2019, despite evidence of at least five other severe storms occurring between the 2019 date of loss and his 2022 inspection. Judge only considered the 2019 storms because he simply *felt* like those dates were sufficient. *Second*, Judge fails to establish a reliable methodology supporting his conclusion that the Storm damaged the Property. Nowhere in Judge's expert report does he set forth the reasoning or methodology sufficient to establish that his causation opinions are scientifically valid or that they are reliably supported by the underlying information. Moreover, Judge did not even attempt to rule out other potential non-covered or excluded causes of Plaintiff's alleged damages and admitted that to do so, Judge would need to consult an engineer.[3] Ultimately, these failures render Judge's opinions unreliable and they should accordingly be excluded.

## II.  FACTUAL BACKGROUND

Church Mutual issued policy number 0118133-02-696239 to Hilltop with effective dates of coverage from December 2, 2018 to December 2, 2021 (the "Policy").[4] On August 28, 2019, Hilltop submitted a claim for hail and wind damage to the Property allegedly resulting from a

---

[1]  Exhibit 1, March 4, 2022, J M Judge & Associates Expert Report, Appx. p. 9.

[2]  *Daubert.*, 509 U.S. at 593.

[3]  Exhibit 2, Relevant Excerpts from May 26, 2022 Deposition of James Maxwell Judge ("Judge Depo."), at Appx. p. 43 (p. 43:4-6).

[4]  Relevant excerpts from the Policy are attached at *Exhibit A* to Defendant Church Mutual's Motion for Summary Judgment ("Church Mutual's MSJ"), filed contemporaneously herewith.

storm event on or about March 13, 2019.[5] Upon receipt of the notice of loss, Church Mutual began its investigation and adjustment, retaining Mike Hickey with Leading Edge Claims Service ("Hickey") as the independent adjuster to assist in the investigation and evaluation of the claim.[6] Due to excessive rain, Hickey was unable to inspect the Property until September 26, 2019.[7] Hickey inspected the Property with Clayton Fourniquet with Hilltop and Anayo Onyi with Stonewater Roofing ("Onyi"), a roofing contractor retained by Hilltop.[8] Hickey reported no hail damage to the shingles, which appeared to be roughly 15 years old; recent wind damage to the left slope of the roof along with prior repairs; a small area of tarped shingle damage; minor wind damage to the siding trim on the rear and left elevations; dents to the turbine and turtle vents; hail damage to the guttering on the elevations; screen damage on the right, left, and rear elevations; and damage to the fascia on the rear elevation.[9] Hickey also noted that no interior damage was reported or claimed during the inspection, and further, that there was no visible water staining observed in the interior rooms under or near the observed wind damage.[10] Based on Hickey's inspection and evaluation, Hickey drafted an estimate for the covered wind damage identified totaling $13,226.89 on a replacement cost basis.[11] Less the applicable $2,500.00 deductible, Church Mutual tendered payment to Hilltop in the amount of $10,726.89 on October 14, 2019.[12]

---

[5]   *See Exhibit B* to Church Mutual's MSJ, filed contemporaneously herewith.

[6]   *Id.*

[7]   *Id.*

[8]   *Id.*

[9]   *Id.*

[10]   *Id.*

[11]   *See Exhibit C* to Church Mutual's MSJ, filed contemporaneously herewith.

[12]   *See Exhibit D* to Church Mutual's MSJ, filed contemporaneously herewith.

On January 7, 2020, Church Mutual received notice that Hilltop had retained Premier Adjustment Group, LLC ("Premier") to act as its public adjuster.[13] On or about March 18, 2020, Church Mutual received an estimate from Premier totaling $340,694.92 on a replacement cost basis, which primarily included costs related to replacement of the roofing at the Property.[14] Upon receipt of Premier's estimate, and in further investigation of the loss, Church Mutual retained engineer Daniel J. Hillner with EFI Global ("Hillner") to determine whether the roofing at the Property had sustained hail damage from the reported date of loss.[15] On April 1, 2020, Hillner inspected the Property with Darrell Duane Smith of Insurance Adjusters Group LLC and/or Premier Adjustment Group, LLC ("Smith"), Onyi, David Walker, and James Welchly.[16] Hillner's conclusions, which are outlined in his April 16, 2020 Roof Storm Damage Assessment, are summarized as follows:

- No identified damage to the roof resulting from hail strikes;

- Five (5) hailstorm events with hail ranging between 0.75-inch diameter and 0.9-inch diameter were reported to have occurred at the Property between 2010 and 2018;

- Hail of at least 0.75-inch in diameter was not recorded at the Property on the date of loss and has not been recorded at the Property since April 13, 2018;

- Widespread, large-scale granule loss on the roof appears to be a result of excess heat below the shingles caused by inadequate venting;

- The observed granule loss on the roof was not consistent with hail damage;

- Shingles of lower quality may have been used when the roof was placed; and

---

[13] *See Exhibit E* to Church Mutual's MSJ, filed contemporaneously herewith.

[14] *See Exhibit F* to Church Mutual's MSJ, filed contemporaneously herewith.

[15] *See Exhibit G* to Church Mutual's MSJ, filed contemporaneously herewith.

[16] *Id.*

- The shingles on the roof have reached the end of their service life and should be replaced.[17]

Based on Hillner's findings, Church Mutual denied the remainder of the claim on April 30, 2020, further explaining that there was no hail impact damage to the roof surfacing at the Property and that the roof damage was the result of excess heat below the shingles caused by inadequate venting and roof surfacing that was nearing the end of its service life.[18] Specifically, Church Mutual relied on the Policy's exclusions for wear and tear, deterioration, continuous or repeated seepage or leakage of water, and faulty, inadequate, or defective workmanship, repair, construction, or maintenance.[19]

Hilltop disagreed with Church Mutual's coverage decision and commenced the instant lawsuit on July 16, 2021.[20] Specifically, Hilltop claims $302,368.78 in actual damages to the Property caused by hail or wind, which includes full replacement of the composition shingle roof, vinyl siding, fascia, and soffit along with interior water damage repairs.[21] To support its claimed damages at the Property, Plaintiff has submitted a report from James Maxwell Judge ("Judge's Report").[22] Plaintiff also relies upon an estimate from JM Judge & Associates totaling $302,368.78.[23] Therein, Judge concludes that the roof, vinyl siding, fascia, and soffit at the Property were damaged by wind and/or hail during a March 13, 2019 storm requiring full

---

[17] *Id.*

[18] *See Exhibit H* to Church Mutual's MSJ, filed contemporaneously herewith.

[19] *Id.*

[20] Dkt. 2.

[21] Exhibit 1, March 4, 2022, J M Judge & Associates Expert Report, Appx. pp. 1-34.

[22] *Id.*

[23] *Id.* at Appx. pp. 23-34.

replacement.[24] Specifically, Judge concluded the following:

> **Conclusion:** The damage to this property is consistent with the Storm Event dated 3/13/19, to the exclusion of other potential storm events, based on my observation of the size of the impacts, the age of the impacts, the level of water penetration, and the reports of the owners.
>
> Based on my inspection, I observed:
>
> 1. Impact damage has occurred throughout the Roof Covering.
>
> 2. The Asphalt shingles are brittle and show evidence of Souring, Impact Damage and Wind Damage.
>
> 3. Damage is far too numerous to repair.
>
> 4. This is a storm damaged roof in need of full replacement.
>
> 5. Vinyl Siding, fascia and soffit are also damaged beyond repair and in need of replacement.
>
> All is consistent with the storm event in question. I have further eliminated other potential causes of the damage, such as wear and tear, foot traffic, improper installation, and older storm events based on my personal observations, training, and experience. The damage did not appear consistent with any cause other than the March 2019 storm event.[25]

After receiving Judge's report, Church Mutual's expert, Hillner, supplemented his analysis based on the information Judge provided.[26] Hillner noted the following:

- Although hail of 0.75-inch diameter may have occurred at the site on the date of loss, no damages to the roof covering consistent with hail impacts were documented by EFI or by Judge.
- Multiple high wind events have occurred, both prior to and following the date of loss. It is not reasonable to conclude that all wind damage to the building occurred on the date of loss.

---

[24] *Id.* at Appx. pp. 9-10.

[25] *Id.*

[26] <u>Exhibit 3</u>, March 31, 2022 EFI Global's Supplemental Letter ("EFI Supplemental Report"), at Appx. pp. 54-67.

- A comprehensive forensic evaluation must consider all potential storm events which may have affected the roof during its lifespan. This has not been performed by Judge.
- As communicated in EFI's April 16, 2020 report, granule loss to the shingles is a result of heat-related damage and the potential of lower-quality shingles having been used on the roofs. Hail impacts did not contribute to granule loss or damage to the shingles.[27]

## III.   ARGUMENT AND AUTHORITIES

Federal Rule of Evidence 702 permits testimony by an expert witness when the witness "is qualified as an expert by knowledge, skill, experience, training, or education" and: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.[28]

Rule 702 requires courts to act as gatekeepers by ensuring that expert scientific testimony "both rests on a reliable foundation and is relevant to the task at hand."[29] Trial courts must make the preliminary determination of whether the basis of the expert's testimony, or methodology, is scientifically valid and properly applied to the facts in a particular case.[30] Further, and most importantly, "[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method and are reliable."[31]

---

[27]  *Id.*

[28]  FED. R. EVID. 702; *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).

[29]  *Daubert,* 509 U.S. at 597.

[30]  *Hahn v. United Fire & Cas. Company,* No. 6:15-CV-00218 RP, 2017 WL 1289024, at *3 (W.D. Tex. April 6, 2017) (citing *Daubert*, 509 U.S. at 592−93).

[31]  *Id.* (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).

1.   **Judge's opinion that "[t]he damage to this property is consistent with the Storm Event dated 3/13/19, to the exclusion of other potential storm events" is not sufficiently supported by the underlying facts and data.**

The admissibility of expert testimony is governed by FED. R. EVID. 702. A court must ensure "that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[32] Courts "have considerable leeway in deciding . . . how to go about determining whether particular expert testimony is reliable."[33] "[T]he expert's testimony must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[34] "Where an expert's opinion is based on insufficient information, the analysis is unreliable."[35]

*Daubert* laid out a non-exhaustive list of factors that district courts may use in evaluating the reliability of expert testimony, emphasizing that this is a flexible inquiry and the focus must be solely on principles and methodology, not on the conclusions that they generate.[36] However, "conclusions and methodology are not entirely distinct from one another."[37] The expert must rely on "sufficient facts or data" and "appl[y] the principles and methods reliably to the facts."[38] This

---

[32]   *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

[33]   *Id.*

[34]   *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (internal quotation marks omitted).

[35]   *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

[36]   *Daubert,* 509 U.S. at 593−95 (discussing factors that include whether the expert's theory or technique can be or has been tested; has been subjected to peer review and publication; has a known or potential rate of error or standards controlling its operation; is generally accepted in the relevant scientific community).

[37]   *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[38]   FED. R. EVID. 702.

Court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[39] Trial courts should not admit opinion testimony that suffers from too great an analytical gap between the existing data and the conclusions of the expert.[40]

The Supreme Court explained in *Kumho Tire Co., Ltd. v. Carmichael* that *Daubert's* "gatekeeping" obligation extends not just to scientific testimony, but all expert testimony.[41] When dealing with non-scientific expert testimony, district courts may use the *Daubert* factors where they are reasonable measures of the reliability of the testimony.[42] Comporting with Rule 702's requirements for reliability of expert testimony, if there are other plausible causes of a plaintiff's injury or damage, the plaintiff must offer evidence excluding those causes with reasonable certainty.[43]

Notably, an expert witness cannot simply pick a cause of damage most advantageous to his client's claim without considering or eliminating other causes.[44] "Unsubstantiated factual

---

[39]   *Joiner,* 522 U.S. at 146.

[40]   *Id*. at 139.

[41]   526 U.S. at 147.

[42]   *Id.* at 152.

[43]   *Cotroneo v. Shaw Enviro. & Infrastructure*, 639 F.3d 186, 193 (5th Cir. 2011) (finding summary judgment affidavit to be too speculative, where doctor opined that plaintiffs disorders could be caused by radiation exposure, but doctor made no effort to exclude alternative causes suggested by opposing expert with reasonable certainty); *Omni USA, Inc. v. Parker-Hannifin Corp*., 964 F.Supp.2d 805, 837 (S.D. Tex. 2013) (excluding mechanical engineer's conclusion regarding cause of seal leakage, where engineer failed to rule out other possible causes of leakage); *see also McNabney v. Laboratory Corp. of Am.*, 153 F. App'x. 293, 296 (5th Cir. 2005) (unpub.) (emphasizing that, to admit testimony under Rule 702, medical causation experts must have considered and excluded other possible causes of injury).

[44]   *Viterbo v. Dow Chem. Co*., 826 F.2d 420, 424 (5th Cir.1987) ("[A]n unsupported opinion does not serve the purpose for which it is offered, that is, objectively to assist the jury in arriving at its verdict . . . Here, the plaintiff's symptoms could have numerous causes and, without support save plaintiff's oral history, the expert simply picks the cause that is most advantageous to plaintiff's claim . . . Without more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible.")).

assertions will bar expert testimony, as will 'altered facts and speculation designed to bolster [the proponent's] position.'"[45] Nowhere in Judge's deposition or his report does he provide any reasonable analysis for his belief that the roof and Property damage was caused by the March 13, 2019 hailstorm. While an expert need not exclude every possible cause of a loss to testify as to causation, an expert's failure to carefully consider and exclude those alternatives "renders his opinion little more than speculation."[46]

Here, Judge's causation opinion is based on inadequate facts and data because he failed to even consider other potential storm events.[47] When asked about the storm search period Judge performed, he confirmed that the date range he reviewed was only from January 1, 2019 to December 31, 2019, even though he did not inspect the Property until nearly three years later in 2022.[48] And when asked if he looked at any storms outside that period, Judge said, "I felt like this was sufficient to establish the storm event here."[49]

> Q: ...And it looks like the search period that you searched was from January 1st, 2019 through December 31, 2019. So did you – did you look at any storms outside – any hailstorms outside of that period?
>
> A: Sometimes we will. It –
>
> Q: Did you in this case?

---

[45] *United States v. 4.620 Acres of Land, more or less, in Hidalgo Cty., Texas*, No. 7:20-CV-00154, 2021 WL 5999388, at *2 (S.D. Tex. Dec. 20, 2021), *reconsideration denied*, No. 7:20-CV-00154, 2022 WL 214636 (S.D. Tex. Jan. 25, 2022) (citations omitted).

[46] *McNabney*, 153 F. App'x. at 295 (citing *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 559 (Tex.1995) ("An expert who is trying to find a cause of something should carefully consider alternative causes. [An expert's] failure to rule out other causes of the damage renders his opinion little more than speculation."))

[47] <u>Exhibit 2</u>, Judge Depo. at Appx. p. 47 (p. 47:6-16).

[48] *Id*.

[49] *Id.*

A:  Well, there's the date range that I put on the storm. I – I don't recall. I felt like this was sufficient to establish the storm event here.

Q:  And we talked about this earlier, but you went and inspected the property three years – almost three years after the storm, right?

A:  I believe that's correct.

Q:  Do you know whether or not there were any storms in between March 13th, 2019 and the date that you inspected?

A:   I'm sure there would have been.

Q:  Do you know – did you look at any of those hailstorms?

A:  I – no, I didn't. I – I don't recall.[50]

…

Q:  But if you didn't look at these other storms, how – you know, if you didn't look at the weather data on these other storms, how can you state definitively that they couldn't have caused that damage that you're – that you see? What's the – what's the basis for that opinion?

…

A:  You know, I'm – I'm going to say that it was – we may have had that date reported by the fellow that showed us in the building. I – I don't know what led us to that date to begin with, but that's the one that seemed the most reasonable to me to cause the damage on the roof.

Q:   All right. But you didn't look at any of these other dates, right?

…

A.  Well, no, I didn't, not that I recall.[51]

But, as Plaintiff's consultant Stonewater Roofing admits, there were at least five significant storms between the March 2019 reported date of loss and Judge's inspection in February 2022.[52]

---

[50]  *Id*. Appx. at pp. 47-48 (p. 47:7-48:2).

[51]  *Id*. Appx. at p. 50 (p. 50:8-25).

[52]  <u>Exhibit 4</u>, Excerpts from May 6, 2022 Deposition of Anayo Onyi, at Appx. pp. 74, 76-77 (p. 25:13-14; 40:23-41:23); *see also*, <u>Exhibit 3</u>, EFI Supplemental Report, Appx. pp. 54-67.

And Judge's report itself contains the StormIntel Verify Wind History Report that identifies a March 9, 2019 as the date of the wind event.[53] Further, when discussing photos of the Property, Judge acknowledged that there was some damage at the Property that likely occurred from a previous storm when the roof was last replaced:

> A:  …You've got the [turbines], the appurtenance – appurtenances, the [turbines] and the vents, and they've had hail damage, and, you know, some of that may be from a prior storm. But the [turbines] look like they're pretty fresh and would be attributed to this storm.
>
> Q:  How can you tell if it's fresh versus – or in your terms, "pretty fresh"? How would you tell?
>
> A:  Okay. We can lower that a little bit and look at the [turbine] versus the – the number. That's a 550 low-profile vent. We've got quite a bit of hail damage on that, and I would assume that maybe the roof had been replaced prior and they didn't replace that vent. The vent seems to be functional, but then we've only got one hail indentation on the [turbine]. So it would indicate to me that the [turbine] was put on when the roof was last replaced, but not the 550 vent. That would be my assumption.[54]

Because he failed entirely to consider other storm events, Judge's conclusion that the "damage to this property is consistent with the Storm Event dated 3/13/19, to the exclusion of other potential storm events" is without sufficient basis to render his opinions reliable.[55] His opinions are not based on any reliable foundation, as required by federal law. To the extent Plaintiff seeks to offer Judge to testify that the Storm caused the damage to the Property to the exclusion of other potential storm events, support for such opinions is not contained in Judge's expert report, nor are they substantiated by underlying facts or data. For these reasons, Judge's causation opinions should be excluded from the evidence in this case.

---

[53]   Exhibit 1, at Appx. p. 6.

[54]   Exhibit 2, Judge's Depo. at Appx. p. 41 (p. 41:5-21).

[55]   Exhibit 1, Judge Report, Appx. p. 9.

2.      **Judge applies an unreliable methodology to support his opinion that the Storm caused the damage to the Property.**

Nowhere in Judge's expert report does he set forth the reasoning or methodology sufficient to establish that his causation opinions are scientifically valid or that they are reliably supported by the underlying information. Specifically, Judge failed to qualify his methodology and failed to exclude other potential causes with reasonable certainty.

Church Mutual's engineer, Hillner, concluded in his April 16, 2020 Roof Storm Damage Assessment that the widespread, large-scale granule loss on the roof at the Property was a result of excess heat below the shingles caused by inadequate venting.[56] Judge, however, did not address any such inadequate venting in his report or otherwise.[57] Instead, when asked about inadequate venting of the shingles in his deposition, he stated that "[w]e'd have to have an engineer to determine whether the ventilation it has is adequate . . . ."[58] Accordingly, not only has Judge failed to eliminate improper installation (i.e. faulty or inadequate repair, construction, or renovation) as a potential cause, he admitted that he *cannot* do so without an engineer.[59]

Additionally, although Judge claims to have eliminated wear and tear as a potential cause, when asked about his analysis of the widespread granule loss, he testified that he did not "go off on a fishing expedition . . . ."[60]

> Q: …And – but did you do any kind of analysis to rule out any of these other – any other causes in terms of – of the widespread granule loss?
>
> …
>
> A. Ma'am, I found that between the wind and hail, that it was – I felt like

[56]   Exhibit 3, EFI Supplemental Report, at Appx. p. 54.

[57]   Exhibit 1, Judge Report, at Appx. pp. 1-34.

[58]   Exhibit 2, Judge Depo., at Appx. p. 43 (p.43:4-6).

[59]   *Id*.

[60]   *Id.* at Appx. p. 44 (p. 44:6).

that required the roof to be – would require the – being replaced. And
so I didn't go off on a fishing expedition beyond that.[61]

Judge did not contemplate any of the potential non-covered causes identified in Hillner's Report. Judge's failure to consider, and rule out, alternative potential causes of the damage at the Property renders his opinions little more than speculation.

In sum, neither *Daubert* nor the Federal Rules of Evidence requires a court to admit opinion evidence connected to existing data only by the *ipse dixit* of the expert. Judge's report demonstrates a complete lack of any reliable methodology for his causation opinions, rendering them nothing more than speculation and subjective belief that are incapable of satisfying Rule 702's reliability requirement.[62]  For this additional reason, his causation opinion should be excluded.

## IV.    CONCLUSION

Judge's opinion that the Property was damaged by the Storm on March 13, 2019 to the exclusion of other potential storm events or other potential causes is unreliable, because: (1) it is unsupported by underlying facts or data contained in his expert report; and (2) it is the product of an undefined and unreliable methodology. For any and all of these reasons, Church Mutual asks this Court to exclude Judge's opinion testimony from the evidence.

---

[61]   *Id*. at Appx p. 43-44 (p. 43:24-44:6).

[62]   *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) ("The reliability prong mandates that expert opinion be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.").

Respectfully submitted,

**ZELLE LLP**

By:___/s/ Lindsey P. Bruning_____
    G. Brian Odom
    State Bar No. 50511840
    bodom@zellelaw.com
    Lindsey P. Bruning
    State Bar No. 24064967
    lbruning@zellelaw.com
    Kiri D. Deonarine
    State Bar No. 24105298
    kdeonarine@zellelaw.com

901 Main Street, Suite 4000
Dallas, TX  75202-3975
Telephone:     214-742-3000
Facsimile:      214-760-8994

**ATTORNEYS FOR DEFENDANT CHURCH MUTUAL INSURANCE COMPANY**

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for Defendant conferred with counsel for Plaintiff on August 8, 2022, and confirmed that Plaintiff is opposed to the relief requested herein.

Certified to the 8th Day of August, 2022 by:

*/s/ Lindsey P. Bruning*
_____
Lindsey P. Bruning

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing has been served on the following counsel of record in accordance with FEDERAL RULES OF CIVIL PROCEDURE on this 8th day of August, 2022:

> Preston J. Dugas III
> State Bar No. 24050189
> pdugas@dcclawfirm.com
> Vincent P. Circelli
> State Bar No. 24058804
> vcircelli@dcclawfirm.com
> Kelli L. Walter
> State Bar No. 24074576
> kwalter@dcclawfirm.com
> **DUGAS, CHEEK & CIRCELLI, PLLC**
> 1701 River Run, Suite 703
> Fort Worth, TX 76107
> Telephone:     817-945-3061
> Facsimile:     682-219-0761
>
> **ATTORNEYS FOR PLAINTIFF**

*/s/ Lindsey P. Bruning*
_____
Lindsey P. Bruning
