Exhibit 2

In the Matter Of:

# HILLTOP CHURCH OF NAZARENE

vs

# CHURCH MUTUAL INSURANCE CO.

James Maxwell Judge

May 26, 2022



GOUCHER PARKER SPIVEY

**James Maxwell Judge**
**May 26, 2022**

```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF TEXAS
                    TYLER DIVISION

HILLTOP CHURCH OF THE      )
NAZARENE,                  )
                           )
     Plaintiff,            )
                           )
vs.                        ) CASE NO. 6:21-CV-00322-JCB
                           )
CHURCH MUTUAL INSURANCE    )
COMPANY,                   )
                           )
     Defendant.            )
```

                ORAL VIDEOTAPED ZOOM DEPOSITION

                    JAMES MAXWELL JUDGE

                       May 26, 2022


     ORAL VIDEOTAPED ZOOM DEPOSITION OF JAMES MAXWELL

JUDGE, produced as a witness at the instance of the

Defendant and duly sworn, was taken in the above-styled

and numbered cause on the 26th day of May, 2022, from

9:36 a.m. to 11:34 a.m., via Zoom, before Debra K.

Zebert, Certified Shorthand Reporter in and for the

State of Texas, reported by computerized stenotype

machine, pursuant to the Federal Rules of Civil

Procedure and the provisions stated on the record or

attached hereto.



**James Maxwell Judge**
**May 26, 2022**

```
 1                    APPEARANCES

 2

 3  FOR PLAINTIFF:

 4       Vincent P. Circelli, Esquire
         DUGAS, CHEEK & CIRCELLI, PLLC
 5       1701 River Run, Suite 703
         Fort Worth, Texas  76107
 6       817.945.3061
         vcircelli@dcclawfirm.com
 7
    FOR DEFENDANT:
 8
         Lindsey P. Bruning, Esquire
 9          lbruning@zelle.com
         Kiri Deonarine, Esquire
10          kdeonarine@zelle.com
         ZELLE LLP
11       901 Main Street, Suite 4000
         Dallas, Texas  75202-3975
12       214.742.3000

13
    ALSO PRESENT:
14
         Austin Parker, Videographer
15

16

17

18

19

20

21

22

23

24

25
```



**James Maxwell Judge**
**May 26, 2022**

**Page 3**

1

2                                    INDEX

3                                                             PAGE

4  JAMES MAXWELL JUDGE

5  Examination by Ms. Bruning ........................4
   Signature Page  ...................................69
6  Signature Page - No Changes  .....................72
   Court Reporter's Certificate .....................73

7

8                                  EXHIBITS

9

10 EXHIBIT                  DESCRIPTION                PAGE

11 1                 JM Judge & Associates Expert      14
                     Report
12
   2                 Ford v Great American Assurance   19
13                   Case

14 3                 StormIntel Verify Hail History    48
                     Report, 5/26/22

15

16

17

18

19

20

21

22

23

24

25

**James Maxwell Judge**
**May 26, 2022**

**Page 4**

1    THE VIDEOGRAPHER:  Okay.  We're on the

2  record at 9:36.  Today's date is May 26th, 2022.  This

3  is the video deposition of James Maxwell Judge, in the

4  matter of Hilltop Church of the Nazarene v. Church

5  Mutual Insurance Company, Case No. 6:21-CV-00322-JCB.

6  Will counsel state your appearances for the record.

7    MR. CIRCELLI:  Vinny Circelli, on behalf

8  of Plaintiff.

9    MS. BRUNING:  Lindsey Bruning and Kiri

10 Deonarine, on behalf of Church Mutual Insurance Company.

11    THE VIDEOGRAPHER:  Thank you very much.

12 Will the reporter please swear in the witness.

13    THE COURT REPORTER:  Yes.  I have a brief

14 read-on.  I'm Kathy Zebert, the reporter for today's

15 deposition.  Do counsel stipulate and agree that I may

16 administer the oath remotely and that the oath so given

17 is valid for all purposes of this deposition?

18    (All counsel stipulate.)

19    JAMES MAXWELL JUDGE,

20 having been first duly sworn, testified as follows:

21    EXAMINATION

22 BY MS. BRUNING:

23   Q.  All right.  Mr. Judge, my name is Lindsey

24 Bruning.  I work for Church Mutual Insurance Company in

25 this case.  We've not met before, correct?



**James Maxwell Judge**
**May 26, 2022**

1 the -- this picture in the bottom right-hand corner that

2 we're talking about, did you see on this roof isolated

3 impact damage like granule loss -- you stated earlier

4 that you saw granule loss, and that was one the reasons

5 you --

6     A.   You --

7     Q.   -- determined hail damage.  Hold on.  Let me

8 finish -- sorry.  Let me finish the question real quick.

9 I just want to make sure I'm clear.  You stated earlier

10 that -- that you stated -- you stated that you saw

11 granule loss that would be consistent with hail damage,

12 and so I'm trying to -- to find out if there are -- and

13 I didn't see photographs in your -- in your file of that

14 granule loss specifically.  So I'm just trying to

15 clarify whether or not you based your opinion on

16 evidence of -- of granule loss.

17     A.   Can you scroll down just a little bit, and I

18 believe we might have another photograph to look at.

19 Scroll down a little further.  That bottom left-hand

20 corner, you've got a shingle with a crescent shape torn

21 out that's in a valley, and, you know, that's, in my

22 opinion, from impact.  And the likely cause of an impact

23 is a hailstorm.

24          You've got, you know, some other disturbance on

25 the shingle around, but I don't know how you get that



**James Maxwell Judge**
**May 26, 2022**

**Page 41**

1  crescent without there being a hail impact on the

2  shingle there.  As far as granular loss, I -- we may

3  have that in some of these other photographs, but that's

4  -- there's another evidence of hail.

5        You've got the turbans, the appurtenance --

6  appurtenances, the turbans and the vents, and they've

7  had hail damage, and, you know, some of that may be from

8  a prior storm.  But the turbans look like they're pretty

9  fresh and would be attributed to this storm.

10     Q.   How can you tell if it's fresh versus -- or in

11  your terms, "pretty fresh"?  How would you tell?

12     A.   Okay.  We can lower that a little bit and look

13  at the turban versus the -- the number.  That's a 550

14  low-profile vent.  We've got quite a bit of hail damage

15  on that, and I would assume that maybe the roof had been

16  replaced prior and they didn't replace that vent.

17        The vent seems to be functional, but then we've

18  only got one hail indentation on the turban.  So it

19  would indicate to me that the turban was put on when the

20  roof was last replaced, but not the 550 vent.  That

21  would be my assumption.

22     Q.   Okay.  Did you -- do you know -- do you know

23  when the roof was last replaced?

24     A.   I'm not sure.

25     Q.   How do you -- in your professional opinion, how



**James Maxwell Judge**
**May 26, 2022**

**Page 42**

1 do you rule out other causes of these -- this impact,

2 like in the lower left-hand corner?

3     A.    I don't know anything that's going to cause

4 that other than hail damage.

5     Q.    You don't know any other cause of -- anything

6 else that could cause impact damage other than hail?

7               MR. CIRCELLI:   Objection, form.

8     A.    If someone walked up the valley, they could

9 cause damage via foot traffic, but I don't think it

10 would present that way.   It would be a tear and wouldn't

11 cut out a crescent like that.   That's like a golf ball

12 hit the roof or a hailstone, and it hit right on the

13 edge of the shingle.

14 BY MS. BRUNING:

15     Q.    Okay.  Have you looked -- have you seen the --

16 the expert report from Church Mutual's engineer or

17 expert that Church Mutual hired from EFI Global?

18     A.    I've seen EFI Global reports before.  I don't

19 recall whether I saw one on this property or not.

20     Q.    And he reported in -- on this property, he

21 reported very widespread granule loss throughout the

22 roof and attributed it to, you know, basically, it's a

23 15-plus-year roof and discussed ventilation and things

24 like that and blistering from -- from excessive heat.

25               Did you -- have you done any analysis of any



James Maxwell Judge
May 26, 2022

Page 43

1 causes of the damage that you saw up there in those

2 terms?  Did you look at any of those types of causes?

3           MR. CIRCELLI:  Objection, form.

4     A.   Well, it does have ventilation.  We'd have to

5 have an engineer to determine whether the ventilation it

6 has is adequate, but it does have ventilation.  So I

7 wouldn't think you would have excessive heat that would

8 have damaged the shingles, but they do live in an

9 environment where the heat is -- they're sustained to an

10 abrasive brace environment, heat being one of the

11 components.  Excessive is another issue.

12           As far as, you know, the granules being lost,

13 you can have scouring from hail.  You're going to lose

14 granules over time.  That's just a natural process of

15 the aging of the shingles.  And -- but you can

16 accelerate that with hail, even small, pea-size hail

17 that wouldn't cause the impact damage that we have here.

18 We refer to that as scouring, and when you have an

19 excessive amount of granules that are lost, you expose

20 the asphalt, and it would accelerate that deterioration.

21 So scouring, small hail, can be just as damaging to a

22 shingle roof as -- as what the larger hail is.

23 BY MS. BRUNING:

24     Q.   And -- but did you do any kind of analysis to

25 rule out any of these other -- any other causes in terms

James Maxwell Judge
May 26, 2022

Page 44

1  of -- of the widespread granule loss?

2            MR. CIRCELLI:  Objection, form.

3     A.   Ma'am, I found that between the wind and hail,

4  that it was -- I felt like that required the roof to

5  be -- would require the -- being replaced.  And so I

6  didn't go off on a fishing expedition beyond that.

7  BY MS. BRUNING:

8     Q.   Okay.  All right.  I'm going to take you back

9  up to your conclusions and -- evaluation, conclusions

10 and recommendation.  In terms of the wind evaluation,

11 did you -- I think you've kind of -- you've already

12 explained where that -- those conclusions came from.  It

13 was from the -- you saw the repairs that they had done,

14 the temporary repairs, and that's where you got the

15 basis for your causation analysis in terms of wind; is

16 that correct?

17           MR. CIRCELLI:  Objection, form.

18    A.   Yes, that and the building as it existed at the

19 time of my inspection.  We had loose siding, soffit,

20 vinyl.

21 BY MS. BRUNING:

22    Q.   Okay.  Okay.  If you go down to your

23 conclusion, you say the damage to this property is

24 consistent with the storm event dated 3/13/19 to the

25 exclusion of other potential storm events.  Can you

**James Maxwell Judge**
**May 26, 2022**

Page 45

1 explain the basis of that opinion and how you excluded

2 other storm events?

3    A.   Very oftentimes, we'll look at a piece of

4 property that has been through more than one storm

5 event, but the storm event that we've got is sufficient

6 to damage the structure or the roof covering to the

7 extent it needs to be replaced.  And that's the

8 condition conclusion I draw here.

9        The storm event dated 3/13 seemed to possess

10 all the characteristics to have damaged the roof so that

11 it would require replacement.  Was there any damage from

12 another prior storm event that was not reported?

13 Perhaps, but I don't think that precludes the fact that

14 this storm event here would necessitate the replacement

15 of the roof.

16    Q.   Did you look at any other storm events?

17    A.   I -- there's a StormIntel that we've got as

18 part of this report, and it's got other storm events,

19 but those -- you know, they will list other events that

20 happened within one mile or three miles.  And, you know,

21 there's a lot of -- if you go to some of the meetings,

22 some of the people that discuss these things, they don't

23 always report them exactly where the storm event

24 occurred.  They might report it in Tyler, Texas, and it

25 just happens to fall in downtown Tyler.  They'll put the

**James Maxwell Judge**
**May 26, 2022**

Page 46

1  pin on the ZIP code on the town, not exactly where the

2  storm hit.  So I --

3      Q.   So that -- that could certainly happen with

4  regard to the storm on March 13th, 2019 as well, right?

5      A.   You could, but there's always isolated pockets

6  on any kind of a storm, wind and hail.  You'll have high

7  wind over here and less over there, but, you know, they

8  want to report it as one storm event with high winds of

9  62 miles an hour.  And, you know, it may have been 82

10  miles an hour on one side of the storm and 58 on the

11  other.

12         It's -- typically, when you have a hailstorm,

13  the taller they are, the larger hail they have.  And at

14  some point, those storms collapse, and they -- they have

15  an outflow or a microburst where that wind comes down,

16  and it can be very strong.  And, you know, that's not

17  going to be evenly dispersed throughout a storm.

18         So, you know, we get close to a storm -- we've

19  had three-quarter-inch hail on this report within one

20  mile of the location.  There could have been a larger

21  hailstone embedded in that storm.  They're not all going

22  to be exactly the same size.  And it's going to have

23  wind.

24      Q.   So -- and this is the storm you're talking

25  about this -- the storm -- the hail history report that



**James Maxwell Judge**
**May 26, 2022**

**Page 47**

1  you -- you pulled this report, correct?  This was on

2  your --

3      A.   Yes, I did.

4      Q.   And this is Page 5 of your report, right?

5      A.   That's -- looks to be correct.

6      Q.   I think so.  I didn't -- yeah, Page 5.  Sorry.

7  I didn't realize I didn't have the whole page showing.

8  And it looks like the search period that you searched

9  was from January 1st, 2019 through December 31, 2019.

10 So did you -- did you look at any storms outside -- any

11 hailstorms outside of that period?

12     A.   Sometimes we will.  It --

13     Q.   Did you in this case?

14     A.   Well, there's the date range that I put on the

15 storm.  I -- I don't recall.  I felt like this was

16 sufficient to establish the storm event here.

17     Q.   And we talked about this earlier, but you went

18 and inspected the property three years -- almost three

19 years after the storm, right?

20     A.   I believe that's correct.

21     Q.   Do you know whether or not there were any

22 storms in between March 13th, 2019 and the date that you

23 inspected?

24     A.   I'm sure there would have been.

25     Q.   Do you know -- did you look at any of those



**James Maxwell Judge**
**May 26, 2022**

Page 48

1  hailstorms?

2      A.   I -- no, I didn't.  I -- I don't recall.

3      Q.   All right.  I am going to share what I'm

4  marking as Exhibit 3.

5               (Exhibit 3 marked.)

6  BY MS. BRUNING:

7      Q.   And this is a StormIntel Verify Hail History

8  Report that I actually pulled this morning.  It's from

9  the same website that you got yours, this

10  weatherguidance.com.  And it shows at least two other

11  storms in 2020, in July 2020 and October 2020, that

12  had -- that reported .75 and then one-inch hail in the

13  July 2020 storm that were between that March 2019 and

14  then your date of inspection.  Did you know anything

15  about these -- did you look into these storms at all in

16  your analysis?

17      A.   Again, my opinion is the storm date that we

18  had, the March '19 storm, was sufficient to require

19  replacement on the roof.  And we could have had

20  subsequent damage, and, you know, if the roof is already

21  totaled, I don't know what benefit it is to have

22  subsequent damage on it.

23      Q.   But you didn't look at the roof before these

24  storms.  So how would you know it was totaled at the

25  time of the March 2019 storm?



**James Maxwell Judge**
**May 26, 2022**

**Page 49**

1   A.   I -- I assumed that the patches and things were

2 done at that time, and that's -- that's -- was the first

3 date that we had damage that I felt was -- would cause

4 the roof to be totaled, wind and hail.

5   Q.   Did you look at any storms prior to the 2019

6 storm?

7   A.   I don't recall.

8   Q.   So I'm going to share my screen again.  This is

9 a CoreLogic report that was -- that was pulled by Church

10 Mutual -- Church Mutual's engineer, a hail verification

11 report with CoreLogic.  And based on this report, there

12 were at least one, two, three, four, five storms

13 reported at the location with the same -- same or

14 similar size hail; is that correct?  And these are all

15 dated before March 13th, 2009 [sic]; is that correct?

16   A.   I see what you're highlighting.

17   Q.   And it -- I'm stating that correctly, though,

18 right, that these storms also reported hail in that --

19 the same size range as the March -- March 13th, 2019

20 storm?

21   A.   That appears to be correct.

22   Q.   Okay.  And did you rule out any of these other

23 storms?

24   A.   I felt like the storm and the date that I

25 pulled up on -- on the StormIntel was the storm that was



**James Maxwell Judge**
**May 26, 2022**

**Page 50**

1  sufficient to require the roof to be totally replaced,

2  to require that.  And so going and looking for other

3  dates, I have no doubt that that weren't [sic] other

4  storms that passed through the area, but that's the

5  storm that I attribute it to that seemed the most likely

6  to me to cause the damage requiring the roof to be

7  replaced.

8     Q.   But if you didn't look at these other storms,

9  how -- you know, if you didn't look at the weather data

10 on these other storms, how can you state definitively

11 that they couldn't have caused that damage that you're

12 -- that you see?  What's the -- what's the basis for

13 that opinion?

14             MR. CIRCELLI:  Objection, form.

15    A.   You know, I'm -- I'm going to say that it

16 was -- we may have had that date reported by the fellow

17 that showed us in the building.  I -- I don't know what

18 led us to that date to begin with, but that's the one

19 that seemed the most reasonable to me to cause the

20 damage on the roof.

21 BY MS. BRUNING:

22    Q.   All right.  But you didn't look at any of these

23 other dates, right?

24             MR. CIRCELLI:  Objection, form.

25    A.   Well, no, I didn't, not that I recall.



**James Maxwell Judge**
**May 26, 2022**

Page 51

1 BY MS. BRUNING:

2    Q.   Okay.  In terms of, you know, the potential

3 other causes of damage -- well, here, let me -- sorry.

4 Let me pull up your report again.  And, actually, let me

5 go back.  I'll go back again about the wind damage.

6         The wind damage that you identified, you've

7 stated -- in fact, I think a lot of your testimony

8 has -- you've basically stated that the -- that a lot of

9 your opinion on the wind damage specifically relates to

10 the repairs that they -- that the church did at the --

11 at the property, correct?

12    A.   Well, there were repairs.  There was evidence

13 of repairs having been made, but there were also areas

14 that -- that showed damage that hadn't been repaired.

15    Q.   Did you do -- do you know when the repairs had

16 been made to the church?

17    A.   I can't definitively say when those were done.

18 I don't recall.

19    Q.   Okay.  And in terms of the wind history report

20 that you pulled -- this is from your report, Page 6.

21 And again, you -- your search period was on only in

22 2019, January 1st, 2019 through December 31st, 2019.

23 There are a number of wind -- wind events listed on

24 this -- on this report; is that correct?

25    A.   Yes.



**James Maxwell Judge**
**May 26, 2022**

**Page 71**

1      I, JAMES MAXWELL JUDGE, have read the foregoing

2  deposition and hereby affix my signature that same is

3  true and correct, except as noted above.

4

5                              _____

6                              JAMES MAXWELL JUDGE

7

8  THE STATE OF _____)

9  COUNTY OF _____)

10

11     Before me, _____, on this day

12  personally appeared JAMES MAXWELL JUDGE, known to me or

13  proved to me on the oath of _____ or through

14  _____ (description of identity card

15  or other document) to be the person whose name is

16  subscribed to the foregoing instrument and acknowledged

17  to me that he/she executed the same for the purpose and

18  consideration therein expressed.

19     Given under my hand and seal of office on this _____

20  day of _____, _____.

21

22                              _____

23                              NOTARY PUBLIC IN AND FOR

24                              THE STATE OF _____

25  My Commission Expires: _____



**James Maxwell Judge**
**May 26, 2022**

Page 72

8    I declare under penalty of perjury that the

9 foregoing is true and correct.

11                    _____

12                    JAMES MAXWELL JUDGE

15    SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned

16 authority, by the witness, JAMES MAXWELL JUDGE, on this

17 the _____ day of _____, _____.

19                    _____

20                    NOTARY PUBLIC IN AND FOR

21                    THE STATE OF _____

23 My Commission Expires: _____



**James Maxwell Judge**
**May 26, 2022**

Page 73

1                   REPORTER'S CERTIFICATE

2      ORAL VIDEOTAPED DEPOSITION OF JAMES MAXWELL JUDGE

3                       May 26, 2022

4

5      I, the undersigned Certified Shorthand Reporter in

6  and for the State of Texas, certify that the facts

7  stated in the foregoing pages are true and correct.

8      I further certify that I am neither attorney or

9  counsel for, related to, nor employed by any parties to

10 the action in which this testimony is taken and,

11 further, that I am not a relative or employee of any

12 counsel employed by the parties hereto or financially

13 interested in the action.

14     SUBSCRIBED AND SWORN TO under my hand and seal of

15 office on this the 10th day of June,

16 2022.

17

18

19

20     _____

21                     Debra K. Zebert, BS, RPR, CSR
                       RPR No. 839015
22                     Expiration:  12/31/22

23

24

25



**GPS LLC**
**gpscalendar@gps.llc ~ 214.347.4781**