IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| HILLTOP CHURCH OF THE NAZARENE, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | CIVIL ACTION NO. 6:21-cv-00322-JCB |
| CHURCH MUTUAL INSURANCE COMPANY, | § § § § | |
| Defendant. | § § | |

## DEFENDANT CHURCH MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

G. Brian Odom
State Bar No. 50511840
bodom@zellelaw.com
Lindsey P. Bruning
State Bar No. 24064967
lbruning@zellelaw.com
Kiri D. Deonarine
State Bar No. 24105298
kdeonarine@zellelaw.com

ZELLE LLP
901 Main Street, Suite 4000
Dallas, Texas 75202-3975
Telephone:      214-742-3000
Facsimile:      214-760-8994

ATTORNEYS FOR DEFENDANT
CHURCH MUTUAL INSURANCE
COMPANY

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF THE ISSUES .................................................................... 2

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ............................ 2

    A.  The Claims .............................................................................................. 2

    B.  The Lawsuit ............................................................................................ 5

IV. ARGUMENT AND AUTHORITY ................................................................ 7

    A.  Summary-judgment standard. ................................................................ 7

    B.  Hilltop's breach-of-contract claim fails as a matter of law because Hilltop cannot meet its burden to establish causation. ................................................................ 8

        1.  There is significant evidence of long-term wear and tear, age-related deterioration, faulty or inadequate repair, construction, or renovation, and multiple weather events at the Property. ................................................................................ 11

        2.  Hilltop has not made any attempt to segregate covered and non-covered, or excluded, damages. ............................................................................................... 14

        3.  Hilltop's failure to segregate is fatal to its claim. ............................. 19

    C.  Hilltop's extracontractual claims fail as a matter of law. .................... 22

        1.  Because Hilltop cannot maintain its breach of contract claim and asserts no independent injury, Hilltop's claims for violations of the Texas Insurance Code, the DTPA, and common law bad faith fail as a matter of law. ................................ 22

        2.  A *bona fide* coverage dispute is not actionable. ................................ 23

V.  CONCLUSION AND PRAYER .................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.*,
    260 S.W.3d 529 (Tex. App.—Tyler 2008, pet. denied)........................................................8

*Allstate Vehicle & Prop. Ins. Co. v. Reininger*,
    No. 04-19-00443-CV, 2021 WL 2445622 (Tex. App.—San Antonio June 16,
    2021, pet. denied)..................................................................................................................24

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................................................7, 8

*Banda v. Allstate Prop. & Cas. Ins. Co.*,
    No. 4:19-CV-3418, 2020 WL 3972537 (S.D. Tex. July 14, 2020) .......................................23

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................................................7

*Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*,
    892 F.3d 167 (5th Cir. 2018) .................................................................................................19

*Chrysler Insurance Co. v. Greenspoint Dodge of Houston, Inc.*,
    297 S.W.3d 248 (Tex. 2009)..................................................................................................22

*Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*,
    130 S.W.3d 181 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ..................................9

*Cotroneo v. Shaw Env't & Infrastructure, Inc.*,
    639 F.3d 186 (5th Cir. 2011) .................................................................................................16

*Emmert v. Progressive Cnty. Mut. Ins. Co.*,
    882 S.W.2d 32 (Tex. App.—Tyler 1994, writ denied)...........................................................24

*Frymire Homes Servs., Inc. v. Ohio Sec. Ins. Co.*,
    No. 3:19-CV-1938-B, 2020 WL 7259335 (N.D.Tex. Dec. 10, 2019) .....................................9

*Gen. Star Indem. Co. v. Sherry Brooke Revocable Tr.*,
    243 F.Supp.2d 605 (W.D. Tex. 2001)....................................................................................21

*Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*,
    327 S.W.3d 118 (Tex. 2010)...............................................................................................2, 8

*Greenville Townhome Owners Ass'n, Inc. v. Philadelphia Indem. Ins. Co.*,
    *473 F. Supp. 3d 692, 697 (N.D. Tex. 2020)* ..........................................................................25

ii

*Hamilton Properties v. Am. Ins. Co.*,
No. 3:12-CV-5046-B, 2014 WL 3055801 (N.D. Tex. July 7, 2014), *aff'd,* 643
F. App'x. 437 (5th Cir. 2016) ................................................................................................9

*Hamilton Props. v. Am. Ins. Co.*,
643 F. App'x. 437 (5th Cir. 2016) .......................................................................................19

*Hunt v. Cromartie*,
526 U.S. 541 (1999).............................................................................................................7

*JAW The Pointe, L.L.C. v. Lexington Ins. Co.*,
460 S.W.3d 597 (Tex. 2015)............................................................................................2, 8

*Lyons v. Millers Cas. Ins. Co. of Tex.*,
866 S.W.2d 597 (Tex. 1993)...............................................................................................24

*McNabney v. Lab. Corp. of Am.*,
153 F. App'x. 293 (5th Cir. 2005) ......................................................................................16

*Methodist Hosps. of Dallas v. Affiliated FM Ins. Co.*,
521 F.Supp.3d 633 (N.D. Tex. 2021), aff'd, No. 21-10424, 2021 WL 6140253
(5th Cir. Dec. 29, 2021) .......................................................................................................8

*Moore v. Allstate Tex. Lloyd's*,
742 F. App'x. 815 (5th Cir. 2018) ......................................................................................23

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*,
40 F.3d 698 (5th Cir. 1994) .................................................................................................8

*Omni USA, Inc. v. Parker-Hannifin Corp.*,
964 F.Supp.2d 805 (S.D. Tex. 2013) ..................................................................................16

*Paulson v. Fire Ins. Exch.*,
393 S.W.2d 316 (Tex. 1965)................................................................................................8

*Progressive Co. Mut. Ins. Co. v. Boyd*,
177 S.W.3d 919 (Tex. 2005)..........................................................................................22, 24

*Provident Am. Ins. Co. v. Castaneda*,
988 S.W.2d 189 (Tex. 1998)...............................................................................................24

*Provident Life & Accident Ins. Co. v. Goel*,
274 F.3d 984 (5th Cir. 2001) ..............................................................................................7

*Ragas v. Tennessee Gas Pipeline Co.*,
136 F.3d 455 (5th Cir. 1998) ..............................................................................................7

*Richardson E. Baptist Church v. Philadelphia Indem. Ins. Co.*,
 No. 05-14-01491-CV, 2016 WL 1242480 (Tex. App.—Dallas Mar. 30, 2016,
 pet. denied)................................................................................................................25

*Sadovsky v. Nationwide Property & Cas. Ins. Co.*,
 No. SA-18-CV-271-XR, 2019 WL 2165805 (W.D. Tex. May 15, 2019) ........................19, 21

*Seger v. Yorkshire Ins. Co., Ltd.*,
 503 S.W.3d 388 (Tex. 2016)....................................................................................2, 8

*State Farm Fire & Cas. Co. v. Simmons*,
 963 S.W.2d 42 (Tex. 1998).........................................................................................24

*In re State Farm Mut. Auto. Ins. Co.*,
 629 S.W.3d 866 (Tex. 2021).......................................................................................23

*Stults v. Conoco, Inc.*,
 76 F.3d 651 (5th Cir. 1996) .........................................................................................8

*Tchakarov v. Allstate Indem. Co.*,
 No. 3:20-CV-2769-D, 2021 WL 4942193 (N.D. Tex. Oct. 22, 2021) ........................20, 21, 22

*Telepak v. United Servs. Auto. Ass'n*,
 887 S.W.2d 506 (Tex. App.—San Antonio 1994, writ denied)................................................9

*Travelers Indem. Co. v. McKillip*,
 469 S.W.2d 160 (Tex. 1971)....................................................................................8, 21

*Tucker v. State Farm Fire & Cas. Co.*,
 981 F.Supp. 461 (S.D. Tex. 1997) ...............................................................................25

*U.S. Fire Ins. Co. v. Matchoolian*,
 583 S.W.2d 692 (Tex. Civ. App.—Houston [14th Dist.] 1979, *writ ref'd n.r.e.*).....................9

*U.S. Fire Ins. Co. v. Williams*,
 955 S.W.2d 267 (Tex. 1997).......................................................................................24

*United Services Auto. Ass'n v. Croft*,
 175 S.W.3d 457 (Tex. App.—Dallas 2005, no pet.).........................................................24

*USAA Texas Lloyds Co. v. Menchaca*,
 545 S.W.3d 479 (Tex. 2018)..................................................................................22, 23

*Vandeventer v. All Am. Life & Cas. Co.*,
 101 S.W.3d 703 (Tex. App.—Fort Worth 2003, no pet.)....................................................24

*Wallis v. United Servs. Auto. Ass'n*,
 2 S.W.3d 300 (Tex. App.—San Antonio, 1999, pet. denied) ...................................8, 9, 19, 20

*Warrilow v. Norrell*,
  791 S.W.2d 515 (Tex.App.—Corpus Christi 1989, writ denied) ..............................................8

**Statutes**

Texas Insurance Code .................................................................................................22, 23, 24, 25

Deceptive Trade Practice Act .....................................................................................22, 23, 24, 25

**Other Authorities**

Federal Rule of Civil Procedure 56 ...........................................................................................1

Federal Rule Civil Procedure 56(c) ...........................................................................................7

Federal Rule 702 ...................................................................................................................15, 16

<u>**DEFENDANT CHURCH MUTUAL INSURANCE COMPANY'S**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Defendant Church Mutual Insurance Company ("Church Mutual" or "Defendant") moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on the claims asserted by Plaintiff Hilltop Church of the Nazarene ("Hilltop" or "Plaintiff") in its First Amended Complaint.[1]

# I.  **INTRODUCTION**

This dispute involves an insurance claim for damage to Hilltop's property located at 10818 University Drive, Tyler, Texas 75707 (the "Property") allegedly caused by hail and/or wind on or about March 13, 2019 (the "Storm"). At the time of the alleged loss, Hilltop had an insurance policy with Church Mutual insuring the Property against loss or damage, subject to all terms, conditions, limitations, and exclusions therein. The policy excluded wear and tear, deterioration, continuous or repeated seepage or leakage of water, and faulty, inadequate, or defective workmanship, repair, construction, or maintenance. The policy further excluded interior water damage unless the building sustained covered damage allowing the water intrusion.

Hilltop contends that the roof at the Property requires replacement in addition to certain exterior and interior repairs, due to wind and hail on the alleged date of loss. But Church Mutual and its expert disagree, having concluded that the remaining alleged damage to the Property was caused by excluded causes of loss—wear and tear, deterioration, continuous or repeated seepage or leakage of water, and faulty, inadequate, or defective workmanship, repair, construction, or maintenance.

Under Texas law, an insured is not entitled to recover under an insurance policy unless it proves that its damages are covered by the policy—"[i]nitially, the insured has the burden of

---

[1]  Dkt. 15, Hilltop's First Amended Complaint is the active complaint in this litigation and the deadline to amend pleadings has passed.

establishing coverage under the terms of the policy."[2] And when covered and non-covered perils combine to create a loss, the insured is only entitled to recover that portion of the damage caused *solely* by the covered peril. Importantly, in this case, the insured—Hilltop—bears the burden to segregate the damage attributable solely to the covered event. Hilltop has not, and cannot, present evidence to segregate its damages between the covered and non-covered, or excluded, causes of loss. Accordingly, Hilltop's breach-of-contract claim fails as a matter of law.

Because Hilltop's breach-of-contract cause of action fails as a matter of law, and because Hilltop has not suffered any injury independent of its claim for policy benefits, Hilltop's extra-contractual claims also fail as a matter of law. Church Mutual is therefore entitled to summary judgment on Hilltop's extra-contractual claims.

## II. STATEMENT OF THE ISSUES

1. Under Texas law, an insured is only entitled to recover that portion of the damage caused *solely* by the covered peril when covered and non-covered perils combine to create a loss. Has Hilltop presented evidence segregating its damages between the covered and non-covered, or excluded, causes of loss?

2. Hilltop's claims for bad faith arise from Church Mutual's alleged failure to pay Hilltop's entire claim. To the extent the Court finds that Church Mutual did not breach the insurance policy, can Hilltop still maintain a claim for bad faith against Church Mutual?

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. The Claims

Church Mutual issued policy number 0118133-02-696239 to Hilltop with effective dates of coverage from December 2, 2018 to December 2, 2021 (the "Policy").[3] On or about August 28, 2019, Hilltop submitted a claim for hail and wind damage to the Property allegedly resulting from

---

[2]   *JAW The Pointe, L.L.C. v. Lexington Ins. Co.,* 460 S.W.3d 597, 603 (Tex. 2015); *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 400 (Tex. 2016); *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

[3]   Pertinent parts of the Policy are attached at Exhibit A, Appx. pp. 1-15.

a storm event on or about March 13, 2019.[4] Upon receipt of the notice of loss, Church Mutual began its investigation and adjustment, retaining Mike Hickey with Leading Edge Claims Service ("Hickey") as the independent adjuster to assist in the investigation and evaluation of the claim.[5] Due to excessive rain, Hickey was unable to inspect the Property until September 26, 2019.[6] Hickey inspected the Property with Clayton Fourniquet with Hilltop and Anayo Onyi with Stonewater Roofing ("Onyi"), a roofing contractor retained by Hilltop.[7] Hickey reported the following:

- No hail damage to the shingles;
- Shingles appear to be roughly 15 years old;
- Recent wind damage to the left slope of the roof along with prior repairs;
- Small area of tarped shingle damage;
- Minor wind damage to the siding trim on the rear and left elevations;
- Dents to the turbine and turtle vents;
- Hail damage to the guttering on the elevations;
- Screen damage on the right, left, and rear elevations; and
- Damage to the fascia on the rear elevation.[8]

Hickey noted that no interior damage was reported or claimed during the inspection, and further, that there was no visible water staining observed in the interior rooms under or near the observed wind damage.[9] Based on Hickey's inspection and evaluation, Hickey drafted an estimate for the covered wind damage identified totaling $13,226.89 on a replacement cost basis.[10] Less the

---

[4]   Exhibit B, October 1, 2019 Loss Report, Appx. p. 17.

[5]   *Id.* at Appx. pp. 17-18.

[6]   *Id.*  at Appx. p. 17.

[7]   *Id.*

[8]   *Id.*, at Appx. p. 18.

[9]   *Id.*

[10]   Exhibit C, Leading Edge Claims Service Estimate, at Appx. pp. 20-27.

applicable $2,500.00 deductible, Church Mutual tendered payment to Hilltop in the amount of $10,726.89 on October 14, 2019.[11]

On January 7, 2020, Church Mutual received notice that Hilltop had retained Premier Adjustment Group, LLC ("Premier") to act as its public adjuster.[12] On or about March 18, 2020, Church Mutual received an estimate from Premier totaling $340,694.92 on a replacement cost basis, which primarily included costs related to replacement of the roofing at the Property.[13] Upon receipt of Premier's estimate, and in further investigation of the loss, Church Mutual retained engineer Daniel J. Hillner with EFI Global ("Hillner") to determine whether the roofing at the Property had sustained hail damage.[14] On April 1, 2020, Hillner inspected the Property with Darrell Duane Smith of Insurance Adjusters Group LLC and/or Premier Adjustment Group, LLC ("Smith"), Onyi, David Walker, and James Welchly.[15] Hillner's conclusions from his April 16, 2020 Roof Storm Damage Assessment are summarized as follows:

- No identified damage to the roof resulting from hail strikes;
- Five (5) hailstorm events with hail ranging between 0.75-inch diameter and 0.9-inch diameter were reported to have occurred at the Property between 2010 and 2018;
- Hail of at least 0.75-inch in diameter was not recorded at the Property on the date of loss and has not been recorded at the Property since April 13, 2018;
- Widespread, large-scale granule loss on the roof appears to be a result of excess heat below the shingles caused by inadequate venting;
- The observed granule loss on the roof was not consistent with hail damage;
- Shingles of lower quality may have been used when the roof was placed; and

---

[11]   Exhibit D, October 14, 2019 Payment Letter, at Appx. p. 29.

[12]   Exhibit E, January 7, 2020 email from Premier Adjustment Group advising of retention, at Appx. pp. 31-32.

[13]   Exhibit F, Premier Adjustment Group Estimate, at Appx. pp. 34-43.

[14]   Exhibit G, April 16, 2020 EFI Global's Roof Storm Damage Assessment ("EFI Report"), at Appx. p.46.

[15]   *Id.*

- The shingles on the roof have reached the end of their service life and should be replaced.[16]

Based on Hillner's findings, Church Mutual sent a denial letter dated April 30, 2020 to Hilltop explaining that there was no hail impact damage to the roof surfacing at the Property and that the roof damage was the result of excess heat below the shingles caused by inadequate venting and roof surfacing that was nearing the end of its service life.[17] Church Mutual relied on the Policy's various exclusions for such coverage determination, including the exclusions for wear and tear, deterioration, continuous or repeated seepage or leakage of water, and faulty, inadequate, or defective workmanship, repair, construction, or maintenance.[18]

## B.    The Lawsuit

Hilltop disagreed with Church Mutual's coverage decision and commenced the instant lawsuit on July 16, 2021.[19] Specifically, Hilltop claims $302,368.78 in actual damages to the Property caused by hail or wind, which includes full replacement of the composition shingle roof, vinyl siding, fascia, and soffit along with interior water damage repairs.[20]

To support its claimed damages at the Property, Plaintiff submitted an expert report from James Maxwell Judge ("Judge") dated March 4, 2022 after inspecting the Property on February 18, 2022.[21] Plaintiff also relies upon an estimate from JM Judge & Associates totaling $302,368.78.[22] Therein, Judge concludes that the roof, vinyl siding, fascia, and soffit at the

---

[16]   *Id.* at Appx. p. 55.

[17]   Exhibit H, April 30, 2020 Denial Letter, at Appx. pp. 111-13.

[18]   *Id.*

[19]   Dkt. 2, Plaintiff's Original Petition.

[20]   Exhibit I, March 4, 2022, J M Judge & Associates Expert Report ("Judge Report"), Appx. pp. 115-48.

[21]   *Id.* at Appx. p. 116.

[22]   *Id.* at Appx. pp. 137-48.

Property were damaged by wind and/or hail during a March 13, 2019 storm requiring full replacement.[23] Specifically, Judge concluded the following:

- **Hail Summary:** Hail has struck the entirety of the roof located at the address mentioned above and has damaged it to the point that it needs to be replaced, said damage has caused leaks allowing water marks and destruction to the interior.
- **Wind Summary:** Damage, is evidenced by the Temporary repairs to the roof and the loose or missing Vinyl Siding, soffit and fascia.
- **Conclusion:** The damage to this property is consistent with the Storm Event dated 3/13/19, to the exclusion of other potential storm events, based on my observation of the size of the impacts, the age of the impacts, the level of water penetration, and the reports of the owners.
- Based on my inspection, I observed:
  - Impact damage has occurred throughout the Roof Covering.
  - The Asphalt shingles are brittle and show evidence of Souring, Impact Damage and Wind Damage.
  - Damage is far too numerous to repair.
  - This is a storm damaged roof in need of full replacement.
  - Vinyl Siding, fascia and soffit are also damaged beyond repair and in need of replacement.
- All is consistent with the storm event in question. I have further eliminated other potential causes of the damage, such as wear and tear, foot traffic, improper installation, and older storm events based on my personal observations, training, and experience. The damage did not appear consistent with any cause other than the March 2019 storm event.[24]

Thereafter, Church Mutual's expert, Hillner, supplemented his report, rebutting Judge's analysis and conclusions. Hillner provided his observations and opinions in a March 31, 2022 letter, which was provided to Hilltop.[25] Therein, Hillner noted the following:

- Although hail of 0.75-inch diameter may have occurred at the site on the date of loss, no damages to the roof covering consistent with hail impacts were documented by EFI or by Judge.
- Multiple high wind events have occurred, both prior to and following the date of loss. It is not reasonable to conclude that all wind damage to the building occurred on the date of loss.

---

[23]   *Id.* at Appx. pp. 123-24.

[24]   *Id.*

[25]   <u>Exhibit J</u>, March 31, 2022 EFI Global's Supplemental Letter ("EFI Supplemental Report"), at Appx. pp. 150-63.

- A comprehensive forensic evaluation must consider all potential storm events which may have affected the roof during its lifespan. This has not been performed by Judge.
- As communicated in EFI's April 16, 2020 report, granule loss to the shingles is a result of heat-related damage and the potential of lower-quality shingles having been used on the roofs. Hail impacts did not contribute to granule loss or damage to the shingles.[26]

## IV.  ARGUMENT AND AUTHORITY

### A.    Summary-judgment standard.

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[27] The appropriate inquiry for the Court to make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[28]

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.[29] In sustaining this burden, the movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[30] In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial."[31] Once the moving party makes a properly supported motion for

---

[26]  *Id.*

[27]  Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999).

[28]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

[29]  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).

[30]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

[31]  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57).

summary judgment, the nonmoving party must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[32] Conclusory allegations are also insufficient, as the nonmovant cannot defeat a summary judgment motion without significant, probative evidence in support of its claim.[33]

**B.**     **Hilltop's breach-of-contract claim fails as a matter of law because Hilltop cannot meet its burden to establish causation.**

Under Texas law, the elements of a breach-of-contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[34] With respect to an insurance contract, an insured is not entitled to recover under an insurance policy unless it proves that its damages are covered by the policy—"[i]nitially, the insured has the burden of establishing coverage under the terms of the policy."[35] As an extension of this rule of law, Texas recognizes the doctrine of concurrent causes, which provides: when "covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril(s)."[36] Importantly, in such cases, the insured—Hilltop—bears

---

[32]   *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (internal quotation marks omitted).

[33]   *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (citing *Anderson*, 477 U.S. at 249).

[34]   *Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.*, 260 S.W.3d 529, 536 (Tex. App.—Tyler 2008, pet. denied).

[35]   *JAW The Point*, 460 S.W.3d at 603; *Seger*, 503 S.W.3d at 400; *Gilbert*, 327 S.W.3d at 124.

[36]   *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 302−03 (Tex. App.—San Antonio, 1999, pet. denied) (citing *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971); *Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 319 (Tex. 1965); *Warrilow v. Norrell*, 791 S.W.2d 515, 527 (Tex.App.—Corpus Christi 1989, writ denied)).; s*ee also Methodist Hosps. of Dallas v. Affiliated FM Ins. Co.,* 521 F.Supp.3d 633, 639 (N.D. Tex. 2021), aff'd, No. 21-10424, 2021 WL 6140253 (5th Cir. Dec. 29, 2021) (citing *JAW The Point*, 460 S.W.3d at 608).

---

the burden to segregate the damage attributable solely to the covered peril.[37] And because such allocation is central to Hilltop's claim for coverage, its failure to carry this burden of proof is fatal to its ability to pursue the claim.[38]

Here, the Policy covers losses that occur during the effective dates of the Policy—December 2, 2018 to December 2, 2021.[39] Such coverage is subject to all terms, conditions, limitations, and exclusions in the Policy. The Policy expressly excludes damage caused by wear and tear, deterioration, continuous or repeated seepage or leakage of water, and faulty, inadequate, or defective workmanship, repair, construction, or maintenance:

**B.    EXCLUSIONS**

\*\*\*

2.  We will not pay for loss or damage caused by or resulting from any of the following:

\*\*\*

d.  (1) Wear and tear;

(2) Rust, or other corrosion, decay, deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself;

---

[37] *See Wallis,* 2 S.W.3d at 303 (citing *Telepak v. United Servs. Auto. Ass'n,* 887 S.W.2d 506, 507–08 (Tex. App.—San Antonio 1994, writ denied)); *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

[38] *See Hamilton Properties v. Am. Ins. Co.,* No. 3:12-CV-5046-B, 2014 WL 3055801, at \*4 (N.D. Tex. July 7, 2014), *aff'd,* 643 F. App'x. 437 (5th Cir. 2016); *Frymire Homes Servs., Inc. v. Ohio Sec. Ins. Co.,* No. 3:19-CV-1938-B, 2020 WL 7259335, at \*3 (N.D.Tex. Dec. 10, 2019); *Wallis,* 2 S.W.3d at 304 (affirming the judgment notwithstanding verdict because the evidence was not legally sufficient to support the jury's finding on the amount of damages caused solely by the covered peril); *U.S. Fire Ins. Co. v. Matchoolian,* 583 S.W.2d 692, 694 (Tex. Civ. App.—Houston [14th Dist.] 1979, *writ ref'd n.r.e.*) (reversing and rendering a take-nothing judgment where the insured did not attempt to segregate damage caused by the covered peril from the uncovered peril).

[39] Exhibit A, the Policy, Appx. p. 3.

---

\*\*\*

      (4) Settling, cracking, shrinking, or expansion;

\*\*\*

   f.  Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

\*\*\*

3.  We will not pay for loss or damage caused by or resulting from any of the following 3. a. through 3. c. but if an excluded cause of loss that is listed in 3. a. through 3. c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\*\*\*

   c.  Faulty, inadequate, or defective:

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation, or remodeling; or

      (4) Maintenance;

   of part or all of any property on or off the described premises.[40]

\*\*\*

The Policy further excludes interior water damage, unless the building first sustains covered damage allowing the water intrusion.

1.  We will not pay for loss of or damage to property, as described and limited to this section.  In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

\*\*\*

---

[40]  *Id.* at Appx. pp. 10-11.

    c.    The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand, or dust, whether driven by wind or not, unless:

        (1)    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand, or dust enters; or

        (2)    The loss or damage is caused by or results from thawing of snow, sleet, or ice on the building or structure.[41]

***

**1.    <u>There is significant evidence of long-term wear and tear, age-related deterioration, faulty or inadequate repair, construction, or renovation, and multiple weather events at the Property.</u>**

There is no genuine dispute that the Property exhibited signs of severe wear and tear, deterioration, and faulty or inadequate repair, construction, or renovation as the roof at the Property is over fifteen years old, and there are numerous photos of prior repairs, deterioration, and widespread, large-scale granule loss in Church Mutual's claim file and expert report as shown below:[42]



Photo No. 27:    Extensive granule loss – Slope A



Photo No. 28:    Previously repaired area of shingles – Slope A

---

[41]    *Id.* at Appx. p. 11.

[42]    <u>Exhibit G</u>, EFI Report, at Appx. pp. 76-79.



Photo No. 29:   Previously repaired areas of shingles – Slope B



Photo No. 32:   Previously repaired area of shingles – Slope H





Photo No. 50:   Typical conditions within Test Area E, noting heavy granule loss and exposed fibers.



Photo No. 33:   Rusted flashing below trim joint – Slope E

Further, Church Mutual's engineer, Daniel J. Hillner, P.E., concluded in his April 16, 2020 Roof Storm Damage Assessment that the widespread, large-scale granule loss on the roof at the Property was a result of excess heat below the shingles caused by inadequate venting.[43] But Hilltop's causation and damages expert, James Maxwell Judge, did not discuss inadequate venting at all in his Report.[44] And when asked about inadequate venting of the shingles in his deposition, he stated: "We'd have to have an engineer to determine whether the ventilation it has is adequate

---

[43]   Exhibit G, EFI Report, at Appx. p. 55.

[44]   Exhibit I, Judge Report, at Appx. pp. 115-48.

. . . ."[45] Church Mutual did just that—offering evidence from an engineer showing that inadequate venting (i.e. faulty or inadequate repair, construction, or renovation) was a cause of the loss. Because Hilltop has not offered any evidence contradicting inadequate venting as a cause with reasonable certainty, it appears that there is no genuine dispute that the Property exhibited signs of faulty or inadequate repair, construction, or renovation.

Hillner also concluded that the shingles on the roof at the Property reached the end of their service life and that the granule loss was not consistent with hail damage.[46] When discussing the granule loss at the Property with Plaintiff's expert, Judge admitted that "[y]ou're going to lose granules over time."[47] Judge continued explaining, "[t]hat's just a natural process of the aging of the shingles."[48] Consequently, due to the natural-aging process of the shingles on the roof at the Property that are nearing the end of their service life, along with inadequate venting of the shingles, there should be no dispute that there is evidence of contributing causes of loss, including wear and tear, deterioration, and faulty or inadequate repair, construction, or renovation that occurred at the Property.

Finally, there is no genuine dispute that the Property experienced weather events before and after the claimed March 13, 2019 date of loss. Hillner pointed out that "[m]ultiple high wind events have occurred, both prior to and following the date of loss."[49] Hillner further noted that "[i]t is not reasonable to conclude that all wind damage to the building occurred on the date of loss."[50]

---

[45]   Exhibit K, May 26, 2022 Deposition of James Maxwell Judge ("Judge Depo.") at Appx. p. 173 (p.43:4-6).

[46]   Exhibit G, EFI Report, at Appx. p. 55.

[47]   Exhibit K, Judge Depo. at Appx. p. 173 (p. 43:14-15).

[48]   Id.

[49]   Exhibit J, EFI Supplemental Report, at Appx. pp. 150-63.

[50]   Id.

In fact, when discussing photos of the Property, even Judge pointed out that there was some damage at the Property that likely occurred from a previous storm when the roof was last replaced:

> A: …You've got the [turbines], the appurtenance – appurtenances, the [turbines] and the vents, and they've had hail damage, and, you know, some of that may be from a prior storm. But the [turbines] look like they're pretty fresh and would be attributed to this storm.
>
> Q: How can you tell if it's fresh versus – or in your terms, "pretty fresh"? How would you tell?
>
> A: Okay. We can lower that a little bit and look at the [turbine] versus the – the number. That's a 550 low-profile vent. We've got quite a bit of hail damage on that, and I would assume that maybe the roof had been replaced prior and they didn't replace that vent. The vent seems to be functional, but then we've only got one hail indentation on the [turbine]. So it would indicate to me that the [turbine] was put on when the roof was last replaced, but not the 550 vent. That would be my assumption. [51]

Furthermore, Anayo Onyi with Stonewater Roofing first inspected the Property in the summer of 2019, and reports at least five additional severe storms at the Property since his first inspection with the most recent storm reportedly occurring in January or February of 2022.[52] With each storm, Onyi testified that he performed additional repair work at the Property.[53] Consequently, it is undisputed that weather events occurred both before and after the claimed March 13, 2019 date of loss, likely constituting separate occurrences under the Policy with multiple applicable deductibles.

### 2.    Hilltop has not made any attempt to segregate covered and non-covered, or excluded, damages.

Despite the foregoing evidence of wear and tear, deterioration, pre-existing damage, faulty or inadequate repair, construction, or renovation, and multiple weather events, Plaintiff's expert

---

[51]   Exhibit K, Judge's Depo. at Appx. p. 171 (p. 41:5-21).

[52]   Exhibit L, May 6, 2022 Deposition of Anayo Onyi ("Onyi Depo."), at Appx. pp. 192, 194-95 (p. 25:13-14; 40:23-41:23).

[53]   *Id.* at Appx p. 199 (p. 45:14-18).

report makes no attempt to segregate damage to the Property between covered and non-covered, or excluded, causes of loss.[54] Instead, Plaintiff's causation and damages expert, James Maxwell Judge, opines that all damage to the Property—including full replacement of roof, vinyl siding, fascia, and soffit, and interior water damage—is solely due to the March 13, 2019 storm.[55]

Although Judge's report states that he "further eliminated other potential causes of the damage, such as wear and tear, foot traffic, improper installation, and older storm events based on [his] personal observations, training, and experience[,]"[56] as mentioned above, his testimony suggests otherwise. In fact, he stated that, in order to respond to Church Mutual's engineer's conclusion that widespread, large-scale granule loss was a result of excess heat below the shingles caused by inadequate venting, he would "have to have an engineer to determine whether the ventilation it has is adequate . . . ."[57] Consequently, not only has Judge failed to eliminate improper installation (i.e. faulty or inadequate repair, construction, or renovation) as a potential cause, but he admits that he *cannot* do so without an engineer.[58] Comporting with Federal Rule 702's requirements for reliability of expert testimony, if there are other plausible causes of the plaintiff's injury or damage, the plaintiff must offer evidence excluding those causes with reasonable

---

[54] <u>Exhibit I</u>, Judge Report, Appx. pp. 115-48.

[55] *Id.* at 123-24.

[56] *Id.* at 124.

[57] <u>Exhibit K</u>, Judge Depo. at Appx. p. 173 (p. 43:4-6).

[58] *Id*.

certainty.[59] Evidence that fails to meet this requirement cannot defeat summary judgment.[60] Consequently, Hilltop's evidence cannot defeat summary judgment on this basis.

Additionally, although Judge claims to have eliminated wear and tear as a potential cause, when asked about his analysis of the widespread granule loss, he testified that he did not "go off on a fishing expedition . . . ."[61]

> Q: …And – but did you do any kind of analysis to rule out any of these other – any other causes in terms of – of the widespread granule loss?
>
> …
>
> A. Ma'am, I found that between the wind and hail, that it was – I felt like that required the roof to be – would require the – being replaced. And so I didn't go off on a fishing expedition beyond that.[62]

Moreover, although Judge concludes unequivocally that the "damage to this property is consistent with the Storm Event dated 3/13/19, to the exclusion of other potential storm events[,]"[63] Judge failed to consider other potential storm events.[64] When asked about the search period Judge performed, he confirmed that the date range he reviewed was from January 1, 2019 to December

---

[59]   *See, e.g., Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 193 (5th Cir. 2011) (finding summary judgment affidavit to be too speculative, where doctor opined that plaintiffs disorders could be caused by radiation exposure, but doctor made no effort to exclude alternative causes suggested by opposing expert with reasonable certainty); *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F.Supp.2d 805, 837 (S.D. Tex. 2013) (excluding mechanical engineer's conclusion regarding cause of seal leakage, where engineer failed to rule out other possible causes of leakage); *see also McNabney v. Lab. Corp. of Am.*, 153 F. App'x. 293, 295 (5th Cir. 2005) (emphasizing that, to admit testimony under Rule 702, medical causation experts must have considered and excluded other possible causes of injury).

[60]   *See e.g., Cotroneo*, 639 F.3d at 193.

[61]   Exhibit K, Judge Depo. at Appx. p. 174 (p. 44:6).

[62]   *Id*. at Appx pp. 173-74 (p. 43:24-44:6).

[63]   Exhibit I, Judge Report, Appx. p. 123.

[64]   Exhibit K, Judge Depo. at Appx. p. 177 (p. 47:6-16).

---

31, 2019.[65] When asked if he looked at any storms outside that period, Judge simply stated: "I felt like this was sufficient to establish the storm event here."[66]

> Q:  …And it looks like the search period that you searched was from January 1st, 2019 through December 31, 2019. So did you – did you look at any storms outside – any hailstorms outside of that period?
>
> A:  Sometimes we will. It –
>
> Q:  Did you in this case?
>
> A:  Well, there's the date range that I put on the storm. I – I don't recall. I felt like this was sufficient to establish the storm event here.
>
> Q:  And we talked about this earlier, but you went and inspected the property three years – almost three years after the storm, right?
>
> A:  I believe that's correct.
>
> Q:  Do you know whether or not there were any storms in between March 13th, 2019 and the date that you inspected?
>
> A:   I'm sure there would have been.
>
> Q:  Do you know – did you look at any of those hailstorms?
>
> A:  I – no, I didn't. I – I don't recall.[67]
>
> …
>
> Q:  But if you didn't look at these other storms, how – you know, if you didn't look at the weather data on these other storms, how can you state definitively that they couldn't have caused that damage that you're – that you see? What's the – what's the basis for that opinion?
>
> …
>
> A:  You know, I'm – I'm going to say that it was – we may have had that date reported by the fellow that showed us in the building. I – I don't know what led us to that date to begin with, but that's the one that seemed the most reasonable to me to cause the damage on the roof.

---

[65] *Id.*

[66] *Id.*

[67] *Id.* Appx. at pp. 177-78 (p. 47:8-48:3).

> Q:   All right. But you didn't look at any of these other dates, right?
>
> …
>
> A.   Well, no, I didn't, not that I recall.[68]

Judge failed to look at other storm events, despite Hilltop's roofer reporting at least five additional severe storms a the Property since his first inspection in the summer of 2019 – all of which occurred prior to Judge's inspection,[69] and further despite the fact that his own report contains a StormIntel Verify Wind History Report that identifies March 9, 2019 as the date of the wind event.[70] As Church Mutual's expert, Hillner, noted:

> Even if hail damage were applicable to the roof, covering, it is unreasonable to conclude that the hail event occurring on the date of loss was responsible for the damages to the exclusion of all other events. Judge's site visit was nearly three years after the date of loss, and followed two additional hail events reported after EFI's site visit. One of those hailstorms reported hail of 1.0-inch diameter, larger than that reported on the date of loss.
>
> Judge has also not considered hail events reported prior to the date of loss, including three hailstorms reported in the StormIntel report and four recorded in the CoreLogic report, all of which produced hail of similar sizes to that reported on the date of loss.
>
> Five documented wind events which followed EFI's April 1, 2020 site visit included a 70 mph windstorm on April 28, 2020. Although a 40 mph wind was reported the day prior to the date of loss, multiple other similar wind events were recorded in the StormIntl report dating back to 2015.[71]

As Hillner points out, "[a] comprehensive forensic evaluation must consider all potential storm events which may have affected the roof during its lifespan. This has not been performed by

---

[68]   *Id*. Appx. at p. 180 (p. 50:8-25).

[69]   Exhibit L, Onyi Depo. at Appx. pp. 194-95 (pp. 40:23-41:23).

[70]   Exhibit I, Judge Report, Appx. p. 120.

[71]   Exhibit J, EFI Supplemental Report, Appx. pp. 155-56.

Judge."[72] Judge's evaluation does not meet this standard and Plaintiff fails entirely to segregate damage to the Property between covered and non-covered, or excluded, causes of loss and fails to point to evidence demonstrating, with any certainty, that the March 13, 2019 storm caused Plaintiff's need for a full roof replacement.[73] Thus, Hilltop's evidence cannot defeat summary judgment on this issue.

### 3. Hilltop's failure to segregate is fatal to its claim.

"An insurer is liable only for losses covered by the policy."[74] When an insured presents "nothing to enable a jury to segregate damages for only that property damage caused by covered perils that occurred within the policy period," summary judgment is proper.[75] In *Sadovsky v. Nationwide Property & Casualty Insurance Co.*, the United States District Court for the Western District of Texas granted an insurer's motion for summary judgment based on the insured's failure to adequately segregate damage caused by the alleged storm event from damage caused by non-covered causes of loss.[76] As here, in *Sadovsky,* plaintiff's expert broadly opined that the roof required replacement due to the alleged windstorm, stating: "There is no question that the tile roofs have been subjected to damage consistent with what would be expected from hail, high winds, and/or convective storms. Damage consistent with windstorms is amply evident from one end of

---

[72] *Id.,* at Appx pp. 156.

[73] *See* Exhibit I, Judge Report, at Appx. pp. 115-48.

[74] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018).

[75] *Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x. 437, 442 (5th Cir. 2016); *see also Wallis*, 2 S.W.3d at 304 ("[T]he jury could believe that plumbing leaks caused part of the complained-of damage. However, the engineers could not indicate the extent to which this peril damaged the Wallises' home. This is fatal to their claim.").

[76] No. SA-18-CV-271-XR, 2019 WL 2165805, at *5 (W.D. Tex. May 15, 2019).

---

the structure to another."[77] But, the court held that this was insufficient, noting that "Plaintiff does not point to summary judgment evidence that adequately segregates loss from the April 2016 storm from non-covered loss, nor does the Court's review of the record reveal any such evidence."[78]

Similarly, in *Tchakarov v. Allstate Indemnity Company*, this Court recently granted summary judgment for the insurer on this same reasoning.[79] In *Tchakarov,* based on evidence of both covered and non-covered causes of loss to the property in question, the Court considered whether the insured had met its burden to either demonstrate the damage claimed was caused solely by the covered peril or segregate the damage attributable solely to the covered event.[80] The Court reasoned:

> Although [an insured] is not required to establish the amount of his damages with mathematical precision, there must be some reasonable basis upon which the jury's finding rests." *Wallis*, 2 S.W.3d at 304. Plaintiffs make the *ipse dixit* assertion in their response brief that they have provided a basis by which the jury could calculate the covered damages, but they do not explain what this method is. And the summary judgment record does not otherwise provide a method by which a jury could reasonably segregate the covered versus uncovered damage. In fact, Worsham, plaintiffs' own expert, testified that he did not attempt to quantify the damage caused by the April 2018 storm, i.e. the non-covered cause, and the July 2018 storm, i.e. the covered cause. According to Worsham, "there was not a need to distinguish between the [damage caused by] the two [storms] because either of them would have ended in the repair that [he] recommended." D. App. at 103. Worsham also acknowledges that damage to the roof could have resulted from even earlier storms, but that he did not attempt to quantify the damage from those storms. *See* D. App. at 98-99, 102-103, 106.
>
> …
>
> Allstate is therefore entitled to summary judgment based on the doctrine of concurrent causation. This is so because, assuming *arguendo* that a jury found that

---

[77] *Id.*

[78] *Id.*

[79] No. 3:20-CV-2769-D, 2021 WL 4942193 (N.D. Tex. Oct. 22, 2021)

[80] *Id.* at *6.

the Property's roof was damaged by hail, the jury could not reasonably segregate the harm resulting from the covered and excluded causes of loss…[81]

Here, we are faced with the same situation. There is ample evidence of wear and tear, deterioration, pre-existing damage, faulty or inadequate repair, construction, or renovation, and weather events that both pre-dated and post-dated the March 13, 2019 storm. Hilltop's expert admits that granule loss that naturally occurred over time exists at the Property.[82] And further, that determination of "whether the ventilation [the shingles have] is adequate . . . ." requires analysis by an engineer.[83] But, without explanation, Hilltop's expert simply posits that the March 13, 2019 storm exclusively caused the damage resulting in Hilltop's losses. As in both *Sadovsky* and *Tchakarov,* Hilltop cannot meet its burden to segregate between covered and non-covered perils. "When, as here, the insured does not meet its burden to segregate losses, Courts award summary judgement for the insurer."[84] Accordingly, Hilltop's claim for breach of contract fails as a matter of law and summary judgment should be granted.[85]

---

[81] *Id.*

[82] Exhibit K, Judge Depo. at Appx. p. 173 (p. 43:13-15).

[83] *Id.* (p.43:4-6).

[84] *Sadovsky*, 2019 WL 2165805, at *5.

[85] *See McKillip,* 469 S.W.2d at 162 ("the insureds [are] obligated to introduce evidence to prove and secure jury findings that the damage was caused solely by [a covered peril]; or segregating the damage caused by the [the covered peril] from that caused by the [excluded peril]."); *Gen. Star Indem. Co. v. Sherry Brooke Revocable Tr.,* 243 F.Supp.2d 605, 635 (W.D. Tex. 2001) (granting summary judgment in favor of the insurer because the insured could not segregate damage caused from the plumbing, a covered peril, versus damage caused from "wear and tear" or "[s]ettling, cracking, shrinking or expansion.").

C.    **Hilltop's extracontractual claims fail as a matter of law.**

    1.    **Because Hilltop cannot maintain its breach of contract claim and asserts no independent injury, Hilltop's claims for violations of the Texas Insurance Code, the DTPA, and common law bad faith fail as a matter of law.**

Hilltop asserts claims against Church Mutual for alleged violations of the Texas Insurance Code, Deceptive Trade Practice Act ("DTPA"), and breach of the common law duty of good faith and fair dealing.[86] *Extra-contractual* causes of action, claims for statutory violations of the Texas Insurance Code, the DTPA, and claims for breach of the common law duty of good faith and fair dealing usually cannot be maintained without a breach of contract.[87] For example, in *Progressive County Mutual Insurance Co. v. Boyd*, the Supreme Court of Texas concluded that even if the trial court had erred in granting summary judgment for the insurer as to the bad-faith and extra contractual claims, the error was harmless because the jury found in the separate breach of contract that there was no coverage under the policy.[88] Additionally, in *Chrysler Insurance Co. v. Greenspoint Dodge of Houston, Inc.*, the Supreme Court of Texas found that where there was no breach of contract, there was no bad faith liability.[89]

"The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy."[90] But there are "two paths an insured may take to establish the damages caused by an insurer's violation of the

---

[86]  Dkt. 15.

[87]  *See e.g., Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005); *see also Tchakarov v. Allstate Indem. Co.*, No. 3:20-CV-2769-D, 2021 WL 4942193, at *7 (N.D. Tex. Oct. 22, 2021) ("Under Texas law, when the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive . . . .This principle applies to alleged violations of the Texas Insurance Code, the DTPA, and the common law duty of good faith and fair dealing") (internal quotation marks omitted).

[88]  *Boyd*, 177 S.W.3d at 920.

[89]  297 S.W.3d 248, 254 (Tex. 2009).

[90]  *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018).

---

Insurance Code: either the insured establishes (1) a right to receive benefits under the policy or (2) an injury independent of a right to benefits."[91] "[T]his independent-injury rule applies only if the damages are truly independent of the insured's right to receive policy benefits."[92] "When an insured seeks to recover damages that 'are predicated on,' 'flow from,' or 'stem from' policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits."[93] Texas courts have "yet to encounter" an instance of a truly independent injury in this type of dispute.[94]

Here, Hilltop has not identified any independent injury beyond its alleged entitlement to policy benefits. Consequently, the general rule applies. Because Hilltop cannot allocate damages between covered perils and non-covered perils, its breach of contract claims fails. Therefore, Hilltop cannot establish that it has a right to receive any additional benefits under the Policy. Thus, as a matter of law, Hilltop's claims for violations of the Texas Insurance Code, the DTPA, and/or its common law bad faith claims fail as a matter of law.

### 2. A *bona fide* coverage dispute is not actionable.

Even if the breach-of-contract claim survives, Church Mutual has not violated the Texas Insurance Code, the DTPA, or the common law duty of good faith and fair dealing in the handling of this claim. The common law bad faith standard is the same as the statutory standard under the

---

[91] *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 872 (Tex. 2021).

[92] *Moore v. Allstate Tex. Lloyd's*, 742 F. App'x. 815, 819 (5th Cir. 2018) (internal quotation marks omitted).

[93] *Menchaca*, 545 S.W.3d at 500.

[94] *Id.*; *Banda v. Allstate Prop. & Cas. Ins. Co.*, No. 4:19-CV-3418, 2020 WL 3972537, at *5 (S.D. Tex. July 14, 2020) ("Finally, with respect to a theory based upon an independent injury, the Supreme Court of Texas has yet to find one in the twenty-three years since it recognized the theoretical possibility of such an injury and Plaintiffs have certainly not alleged one.").

---

Texas Insurance Code and the DTPA.[95] "An insurer does not act in bad faith when a reasonable investigation reveals the claim is questionable[,] . . . . and insurance carriers maintain the right to deny questionable claims without being subject to liability for the erroneous denial of a claim."[96] Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith.[97]  "Nor is bad faith established if the evidence shows the insurer was merely incorrect about the factual basis for its denial of the claim, or about the proper construction of the policy."[98]

"[T]he issue of bad faith focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim."[99] "In a bad faith case, the plaintiff has the burden to prove that the insurance company had no reasonable basis for denying the claim."[100] An objective standard is used to "determine whether a reasonable insurer under similar circumstances would have delayed or denied [payment of the claim]."[101] An insurer breaches its duty of good faith if it denies a claim when its "liability has become reasonably clear."[102] "The scope of the appropriate investigation will vary with the claim's nature and value and the

---

[95]   *Boyd*, 177 S.W.3d at 922.

[96]   *United Services Auto. Ass'n v. Croft*, 175 S.W.3d 457, 471 (Tex. App.—Dallas 2005, no pet.).

[97]   *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 194 (Tex. 1998).

[98]   *Allstate Vehicle & Prop. Ins. Co. v. Reininger*, No. 04-19-00443-CV, 2021 WL 2445622, at *5 (Tex. App.—San Antonio June 16, 2021, pet. denied); *see also U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997).

[99]   *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993).

[100]  *Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 35 (Tex. App.—Tyler 1994, writ denied).

[101]  *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 722 (Tex. App.—Fort Worth 2003, no pet.).

[102]  *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

---

complexity of the factual issues involved."[103] If, after reasonable investigation, the insurer has evidence "showing that the insured's claim may be invalid, a bad-faith action is not viable."[104]

In *Greenville Townhome Owners Ass'n, Inc. v. Philadelphia Indemnity Insurance Co.*, the court granted the insurer's motion for summary judgment as to the plaintiff's bad faith claim because the plaintiff did not present any evidence that the insurer engaged in "a biased and pretextual investigation," as the evidence supported the fact that the insurer relied on its expert's findings to adjust the plaintiff's claim.[105] Similarly here, there is no evidence that Church Mutual engaged in any unreasonable conduct during its claim investigation and coverage determination. Church Mutual relied on its engineering expert when assessing Hilltop's claim, and all the evidence shows that the parties have a bona fide dispute about Church Mutual's liability under the Policy. As such, Church Mutual's investigation of the claim was reasonable and conducted in good faith. Consequently, Hilltop's claims at best constitute a *bona fide* coverage dispute. Accordingly, summary judgment must be granted on Hilltop's claims for violations of sections 541 and 542 of the Texas Insurance Code, the DTPA, and breach of the common law duty of good faith and fair dealing.

## V.  <u>CONCLUSION AND PRAYER</u>

For the foregoing reasons, Defendant Church Mutual Insurance Company respectfully requests that the Court grant this Motion for Summary Judgment in its entirety, denying all relief requested by Plaintiff Hilltop Church of the Nazarene. Church Mutual Insurance Company further

---

[103] *Id.* at 44−45.

[104] *See Tucker v. State Farm Fire & Cas. Co.*, 981 F.Supp. 461, 465 (S.D. Tex. 1997).

[105] *473 F. Supp. 3d 692, 697 (N.D. Tex. 2020)*; *see also Richardson E. Baptist Church v. Philadelphia Indem. Ins. Co.*, No. 05-14-01491-CV, 2016 WL 1242480, at *11 (Tex. App.—Dallas Mar. 30, 2016, pet. denied) ("There is no evidence in the record that Philadelphia Indemnity should have known its experts' estimations were inaccurate.").

requests such other and further relief to which Defendant may be justly entitled, whether at law or in equity.

Respectfully submitted,

**ZELLE LLP**

By:   */s/ Lindsey P. Bruning*
   G. Brian Odom
   State Bar No. 50511840
   bodom@zellelaw.com
   Lindsey P. Bruning
   State Bar No. 24064967
   lbruning@zellelaw.com
   Kiri D. Deonarine
   State Bar No. 24105298
   kdeonarine@zellelaw.com

901 Main Street, Suite 4000
Dallas, TX  75202-3975
Telephone:   214-742-3000
Facsimile:   214-760-8994

**ATTORNEYS FOR DEFENDANT CHURCH MUTUAL INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

     A true and correct copy of the foregoing has been served on the following counsel of record in accordance with FEDERAL RULES OF CIVIL PROCEDURE on this 8th day of August, 2022:

     Preston J. Dugas III
     State Bar No. 24050189
     pdugas@dcclawfirm.com
     Vincent P. Circelli
     State Bar No. 24058804
     vcircelli@dcclawfirm.com
     Kelli L. Walter
     State Bar No. 24074576
     kwalter@dcclawfirm.com
     **DUGAS, CHEEK & CIRCELLI, PLLC**
     1701 River Run, Suite 703
     Fort Worth, TX 76107
     Telephone: 817-945-3061
     Facsimile: 682-219-0761

     **ATTORNEYS FOR PLAINTIFF**

                                        */s/ Lindsey P. Bruning*
                                         Lindsey P. Bruning