**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| HILLTOP CHURCH OF THE NAZARENE, | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:21-cv-00322-JCB |
| | § | |
| CHURCH MUTUAL INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| *Defendant.* | | |

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff Hilltop Church of the Nazarene ("Plaintiff") and files this, Response and Brief in Opposition to Defendant Church Mutual Insurance Company's ("Defendant") Motion for Summary Judgment.  In support thereof, pursuant to the Federal Rules of Civil Procedure, Plaintiff respectfully states:

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. RESPONSE TO STATEMENT OF THE ISSUES ......................................................... 3

III. RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ............................ 3

IV. SUMMARY JUDGMENT STANDARDS ................................................................................ 4

V. ARGUMENT AND AUTHORITIES ....................................................................................... 4

   A.   Defendant Is Not Entitled To Summary Judgment On Plaintiff's Claims........................... 4

      1.   Standards governing Plaintiff's burden to segregate damages for its breach of contract cause of action. ................................................................................................................. 4

      2.   Standards governing Plaintiff's bad faith causes of action. ............................................ 6

   B.   Plaintiff's Breach of Contract Cause of Action Is Supported By Evidence That All Claimed Damages Are Caused By The Covered March 2019 Loss. ........................................ 10

   C.   Plaintiff Need Not Prove an "Independent Injury" to Overcome Summary Judgment..... 15

   D.   Defendant is Not Entitled to Summary Judgment on Plaintiff's Insurance Code and Extra-Contractual Claims. ....................................................................................................................... 16

      1.   Defendant refused to honor the representations it made at the time the policy was issued to Plaintiff and additionally misrepresented the condition of the Property............................ 17

      2.   Defendant's substandard investigation resulted in an unequitable settlement of Plaintiff's claim. .......................................................................................................................... 18

      3.   Defendant failed to promptly provide a reasonable explanation for the basis for excluding covered damage caused by the storm event........................................................... 19

   E.   Defendant's Conduct Exemplifies Why the Texas Insurance Code, DTPA, and Bad Faith Statutes were Created. ..................................................................................................................... 20

VI. CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Allstate Vehicle & Prop. Ins. Co. v. Reininger*,
  No. 04-19-00443-CV, 2021 Tex. App. LEXIS 4760 ................................................................. 8

*Aranda v. Insurance Co. of North America*,
  748 S.W.2d 210 (Tex. 1988) ............................................................................................. 2, 6, 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ....................................................................... 4

*Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*,
  No. 3:16-cv-0465-B, 2017 WL 3115142 (N.D. Tex. July 7, 2017) (Boyle, J.)
  aff'd, 892 F.3d 167 (5th Cir. 2018)................................................................................... 2, 5, 10

*Clift v. Clift*,
  210 F.3d 268 (5th Cir. 2000).......................................................................................................... 4

*Cody v. American Bankers Ins. Co. of Fla.*,
  No. 2:14-cv-187, 2015 WL 6460007 (N.D. Tex. Oct. 21, 2015)............................................. 15

*Connolly v. Serv. Lloyds Co.*,
  910 S.W.2d 557 (Tex. App.—Beaumont 1995, no writ) ........................................................... 9

*Douglas v. State Farm Lloyds*,
  37 F. Supp. 2d 532 (S.D. Tex. 1999) ................................................................................... 9, 19

*Generation Trade, Inc. v. Ohio Sec. Ins. Co.*,
  No. 3:18-CV-0434-K, 2019 WL 3716427 (N.D. Tex. Aug. 6, 2019)............................... 4, 5, 10

*Graber v. State Farm Lloyds*,
  2015 U.S. Dist. LEXIS 77361 (N.D. Tex. June 15, 2015)......................................................... 17

*Higginbotham v. State Farm Mut. Auto. Ins. Co.*,
  103 F.3d. 454, 459 (5th Cir. 1997)........................................................................................... 6, 8

*In re State Farm. Mut. Auto. Ins. Co.*,
  629 S.W.3d 866 (quoting *Menchaca*, 545 S.W.3d at 495) ...................................................... 16

*Lee v. Catlin Specialty Ins. Co.*,
  766 F. Supp. 2d 812 (S.D. Tex. 2011) .................................................................................... 6, 8

Lyons v. Millers Cas. Ins. Co.,
  866 S.W.2d 597 (Tex. 1993)...................................................................................................... 6, 8

*Mayfield v. Texas Dept. Of Criminal Justice*,
  529 F.3d 599 (5th Cir. 2008)........................................................................................................ 4

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) ...................................................................................................................... 4

*Southland Lloyds Ins. Co. v. Cantu*,
  399 S.W.3d 558 (Tex. App.—San Antonio 2011, pet. denied) ........................................... 5, 10

*Starco Impex, Inc. v. Landmark Am. Ins. Co.*,
No. 1:19-CV-39, 2020 WL 3442842 (E.D. Tex. June 3, 2020),
report and recommendation adopted, No. 1:19-CV-39, 2020 WL 3440575
(E.D. Tex. June 23, 2020) .................................................................... 5, 10

*State Farm Fire & Cas. Co. v. Simmons*,
963 S.W.2d 42 (Tex. 1998) ...................................................................... 8

*State Farm Lloyds v. Nicolau*,
951 S.W.2d 444 (Tex. 1997) .................................................................... 8

*Universe Life Ins. Co. v. Giles*,
950 S.W.2d 48 (Tex. 1977) ............................................................. passim

*Viles v. Sec. Nat. Ins. Co.*,
788 S.W.2d 566 (Tex. 1990) ............................................................ 6, 8, 9

*Vizza Wash, LP v. Nationwide Mut. Ins. Co.*,
496 F. Supp. 3d 1029 (W.D. Tex. 2020) ................................................ 15

*Wallis v. United Servs. Auto. Ass'n*,
2 S.W.3d 300 (Tex. App.— San Antonio 1999, pet. denied) ..................... 5

**Statutes**

FED. R. CIV. P.  56(e) ................................................................................ 4

FED. R. CIV. P. 56(c) ................................................................................. 4

Tex. Ins. Code § 541.060(a)(2) ............................................................... 16

Tex. Ins. Code §541.060(a)(1) ........................................................... 17, 18

## I.      INTRODUCTION

On March 13, 2019 a major hail storm slammed Tyler, Texas and other parts of East Texas. Hilltop Church of the Nazarene was severely damaged by hail and wind on that date.[1]  The Church promptly reported the damage to its property insurance company after church members and the Pastor noticed water leaks throughout the Church.[2]

Defendant initially agreed to hail damages at the Property but Defendant later denied the majority of the claim as to the main church building.[3] Defendant, as the insurer for the underlying storm claim submitted by Plaintiff, was charged with the non-delegable duties of: (1) conducting an adequate and reasonable investigation of Plaintiff's damages; and (2) issuing full payment under the insurance policy for the properly-covered damages to Plaintiff's property caused by the storm immediately, and not unduly delaying payment.[4] Here, Defendant failed to fulfill either of these duties as Defendant denied liability for the majority of damages at Plaintiff's Property and did not perform a reasonable investigation and base its decisions on sufficient evidence.[5] As a result, Plaintiff filed suit against Defendant.[6]

Defendant now moves for summary judgment on (1) Plaintiff's breach of contract claim for failure to segregate damages and (2) Plaintiff's bad faith claims based on Defendant's denial allegedly being based on a bona fide dispute.

However, Defendant's Motion for Summary Judgment should be denied in its entirety as a matter of law for two reasons alone:

---

[1] Dkt. No. 30-2 at Def.'s Appx. 17–18.
[2] *See* Dkt. No. 30-2 at Def.'s Appx. 17–18.
[3] Dkt. No. 30-8 at Def.'s Appx. 111.
[4] *See generally* <u>Exhibit 1</u>, Certified Policy at 1–3.
[5] Dkt. No. 30-8 at Def.'s Appx. 111.
[6] *See generally* Dkt. No. 1-4 at 5 (Plaintiff's original state court petition)

1)  **"evidence submitted by [the insured] raise[es] a genuine issue of material fact as to whether the damage was entirely due to the [March 13, 2019] storm**[7]**; and**

2)  **"because the coverage question remains unsettled, the Court cannot resolve Plaintiff's extracontractual claims" at summary judgment.**[8]

In addition, the facts and evidence show that Defendant engaged in intentional and willful conduct designed to avoid coverage and payment obligations that clearly exist. There is more than ample evidence to raise an issue of material fact regarding each of Plaintiff's claims for the intentional, willful and wrongful nature of Defendant's conduct, and, therefore, bad faith. Under Texas law, which applies here, Defendant bears the burden of proof on any bona fide dispute defense, and, as demonstrated herein, Defendant fails to satisfy its difficult burden.[9] Specifically, there is no bona fide dispute, despite Defendant's contentions to the contrary, because there cannot be a bona fide dispute when, like is the case here, there was no good faith and reasonable investigation of the claim.

Plaintiff presents competent summary judgment evidence that, when viewed in the light most favorable to Plaintiff and when drawing all reasonable inferences in favor of Plaintiff, as this Honorable Court must, shows that genuine, disputed issues of material fact exist with respect to Defendant's bad faith conduct, and its unreasonable investigation of Plaintiff's claim. Plaintiff also contends that Defendant's actions constitute bad faith under the DTPA and violations of Chapter 541 and 542 of the Texas Insurance Code, as Defendant conducted a substandard investigation, sought an outcome-based opinion, and otherwise took steps to avoid payment of a claim that it

---

[7] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, No. 3:16-CV-0465-B, 2017 WL 3115142, at *9 (N.D. Tex. July 21, 2017), aff'd sub nom. *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167 (5th Cir. 2018).
[8] *Valleyview Church v. Church Mutual Ins. Co.*, 2022 U.S. Dist. LEXIS 83144 at *14 (N.D. Tex. May 9, 2022) (emphasis added). *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1977); *Hosp. Operations*, 2021 U.S. Dist. LEXIS 125832, at *16 (noting extracontractual claims survive summary judgment if coverage exists).
[9] *See Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 213 (Tex. 1988).

knew was covered.  These disputed fact issues are for a jury's consideration and not appropriate for summary judgment disposition.

## II.     RESPONSE TO STATEMENT OF THE ISSUES

1.     Defendant does not accurately state all the issues pertaining to Defendant's concurrent-causation argument. A complete statement of the issues regarding Defendant's segregation argument is whether Plaintiff (1) presented evidence segregating its damages between the covered and non-covered, or excluded, causes of loss or (2) presented evidence attributing all claimed damages to a covered loss.

2.     Defendant is incorrect in its assertion that Defendant's bad faith claim arises merely out of Defendant's denial of the Claim. Rather, it is Defendant's inappropriate handling of the Claim, arbitrary reasoning, and contradictory statements that give rise to Plaintiff's bad faith claims. However, Defendant's statement of the issue (can Hilltop still maintain a claim for bad faith against Church Mutual?) is accurate.

## III.     RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

**Paragraph 1:** Plaintiff agrees with the majority of paragraph 1 of Defendant's statement of undisputed material facts. Plaintiff disagrees with Defendant's assertion that Defendant was unable to inspect the Property before September 26, 2019 due to excessive rain as the record/material cited to does not support this allegation.

**Paragraph 2:** Plaintiff agrees with paragraph 2 of Defendant's statement of undisputed material facts.

**Paragraph 3:** Plaintiff agrees with paragraph 3 of Defendant's statement of undisputed material facts.

**Paragraph4:** Plaintiff agrees with paragraph 4 of Defendant's statement of undisputed material facts.

**Paragraph 5:** Plaintiff agrees with paragraph 5 of Defendant's statement of undisputed material facts.

**Paragraph 6:** Plaintiff agrees with paragraph 6 of Defendant's statement of undisputed material facts.

**Paragraph 7:** Plaintiff agrees with paragraph 7 of Defendant's statement of undisputed material facts.

## IV.     SUMMARY JUDGMENT STANDARDS

Summary judgment is only proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[10] The moving party bears the burden of showing an absence of evidence to support the non-moving party's case.[11]  If the moving party meets the initial burden of showing that there is no genuine issue, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue for trial.[12]

When evaluating a summary judgment motion, all reasonable inferences are resolved in favor of the non-moving party, and the strength of the evidence is not weighed.[13] Moreover, all evidence must be resolved in favor of the non-movant.[14]

## V.     ARGUMENT AND AUTHORITIES

### A.     Defendant Is Not Entitled To Summary Judgment On Plaintiff's Claims.

### 1.     *Standards governing Plaintiff's burden to segregate damages for its breach of contract cause of action.*

To recover under a breach of contract cause of action for an insurance claim a Plaintiff must satisfy the doctrine of concurrent-causation where a covered cause of loss and excluded loss are at issue.[15] Texas concurrent-causation law is clear that there are two theories under which a

---

[10] FED. R. CIV. P. 56(c).
[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[12] FED. R. CIV. P.  56(e).
[13] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).
[14] *See, e.g., Mayfield v. Texas Dept. Of Criminal Justice*, 529 F.3d 599, 614 (5th Cir. 2008); *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).
[15] *Generation Trade, Inc. v. Ohio Sec. Ins. Co.*, No. 3:18-CV-0434-K, 2019 WL 3716427, at *4 (N.D. Tex. Aug. 6, 2019) ("[T]he doctrine of concurrent causation is just the 'rule which embodies the basic principle that insureds are

Plaintiff may satisfy its concurrent-causation burden.  *See Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 576 (Tex. App.—San Antonio 2011, pet. denied).[16]

A complete reading of concurrent causation law makes it clear that an insured is not required to segregate damages where the insured claims that all of the damages were caused by a single covered event.[17] For example, when an insured produces expert evidence that attributes all of the insured's claimed damages to a covered cause of loss then a Plaintiff is said to have satisfied their burden under the doctrine of concurrent causation.[18] Therefore, Plaintiff is not required to segregate between excluded and covered damages and may maintain its breach of contract cause of action so long as Plaintiff presents evidence that all of the claimed damages are due to a covered loss under the Policy.[19]

---

entitled to recover only that which is covered under their policy.'") (citing *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App.— San Antonio 1999, pet. denied)).

[16] *See also Generation Trade, Inc. v. Ohio Sec. Ins. Co.*, No. 3:18-CV-0434-K, 2019 WL 3716427, at *4 (N.D. Tex. Aug. 6, 2019). The first theory is what Defendant alleges applies here, that Plaintiff must "produce evidence that would allow a jury to segregate covered from non-covered loss." *Generation Trade, Inc. v. Ohio Sec. Ins. Co.*, No. 3:18-CV-0434-K, 2019 WL 3716427, at *4 (N.D. Tex. Aug. 6, 2019).

[17] *See Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 576 (Tex. App.—San Antonio 2011, pet. denied) ("[Insured] claimed all the damage itemized in Barton's report was due to hail, while Southland claimed some of the damage was caused by ordinary wear and tear."); *Generation Trade, Inc. v. Ohio Sec. Ins. Co.*, No. 3:18-CV-0434-K, 2019 WL 3716427, at *4 (N.D. Tex. Aug. 6, 2019) (Kinkeade, E.) (confirming "the ***insured must produce evidence supporting one of two alternate theories: (1) evidence that all the claimed loss resulted from a covered event*** or (2) evidence that provides a jury a reasonable basis to segregate covered from non-covered loss.") (emphasis added).

[18] *See Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 576 (Tex. App.—San Antonio 2011, pet. denied) (holding plaintiff need not apportion damage because jury determined covered loss caused all damages claimed).

[19] *See Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, No. 3:16-cv-0465-B, 2017 WL 3115142, at *9 (N.D. Tex. July 7, 2017) (Boyle, J.) aff'd, 892 F.3d 167 (5th Cir. 2018) (the Northern District of Texas held: "As discussed below, however, neither these documents nor any other evidence submitted by [the insured] raise a genuine issue of material fact as to ***whether the damage was entirely due to the June 13, 2012 storm*** or from which a jury could reasonably segregate the damages between storms.") (emphasis added); *Generation Trade, Inc. v. Ohio Sec. Ins. Co.*, No. 3:18-CV-0434-K, 2019 WL 3716427, at *4 (N.D. Tex. Aug. 6, 2019) (Kinkeade, E.) (though reversing the judgment based on newly discovered evidence, the Northern District Court confirmed that the concurrent causation doctrine had been properly applied, stating: "[T]the ***insured must produce evidence supporting one of two alternate theories: (1) evidence that all the claimed loss resulted from a covered event*** or (2) evidence that provides a jury a reasonable basis to segregate covered from non-covered loss) (emphasis added); *Starco Impex, Inc. v. Landmark Am. Ins. Co.*, No. 1:19-CV-39, 2020 WL 3442842, at *5 (E.D. Tex. June 3, 2020), report and recommendation adopted, No. 1:19-CV-39, 2020 WL 3440575 (E.D. Tex. June 23, 2020) (the Eastern District granted summary judgment for the insurer upon finding that the evidence cited by the insured did not sufficiently differentiate between covered and non-covered damages, noting that although its expert himself acknowledged there was pre-existing damage, "Plaintiff [ ] ***failed to present summary judgment [evidence] establishing what damage was caused solely by a covered peril***, wholly separate from the previous damages, earlier repairs, and wear and tear dating back to at least 2015.") (emphasis added).

2.      *Standards governing Plaintiff's bad faith causes of action.*

Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of the claim.[20] The duty of good faith and fair dealing is imposed on the insurer because of the disparity of bargaining power between the parties and the exclusive control that the insurer exercises over the processing of the claim.[21]

An insurer breaches its duty of good faith and fair dealing by denying or delaying payment of a claim when the insurer's liability has become reasonably clear.[22] Thus, an insurer will be liable for breach of the duty of good faith and fair dealing if it knew or should have known that it was reasonably clear the claim was covered.[23] Determining whether a breach has occurred focuses on the "reasonableness" of the insurer's conduct in handling the claim and not on whether the claim is valid.[24] "Reasonableness" is an objective, fact-intensive standard centering on whether a reasonable insurer under the circumstances would have acted in a similar manner.[25]

In an attempt to clarify the correct standard for the common law duty of good faith and fair dealing the Texas Supreme Court announced in *Universe Life Insurance Company v. Giles*, it was changing from the "no reasonable basis" standard to the "reasonably clear" standard as then codified at Article 21.21, section 4(10)(a)(ii), of the Texas Insurance Code.[26] The court did not hold that the "reasonably clear" standard was now applicable to all statutory violations under the Texas Insurance Code.[27] In fact, the court noted that the Legislature created this specific standard

---

[20] *See Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d. 454, 459 (5th Cir. 1997) (construing Texas law).
[21] *Aranda*, 748 S.W.2d at 213.
[22] *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1977).
[23] *Id.*
[24] *See Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 818 (S.D. Tex. 2011) (citing *Higginbotham v. State Farm Mut. Automobile Ins. Co.,* 103 F.3d 456, 459 (5th Cir. 1997); *see also Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993).
[25] *See Viles v. Sec. Nat. Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990).
[26] *Id.*
[27] *See id.*

in section 4(10)(a)(ii), now codified at section 541.060(a)(2).[28] The court further observed that the Legislature has provided a "laundry list of claims available to private litigants" and that the "reasonably clear" standard had "prohibited insurers from engaging in the conduct now described in section [541.060(a)(2)]."[29] As such, the "reasonably clear" standard is applicable only to Plaintiff's claims that Defendant breached the duty of good faith and fair dealing and that Defendant violated section 541.060(a)(2) of the Texas Insurance Code and not to her allegations that Defendant violated sections 541.060(a)(1), 541.060(a)(3), 541.060(a)(4), 541.060(a)(7), 541.061, and 542.058.

Further, even if Defendant has shown a bona fide coverage dispute, Plaintiff's DTPA cause of action remains alive because a DTPA claim may be predicated upon any violation of section 541.060(a) of the Texas Insurance Code.

In addition, an insurer may also breach its duty of good faith dealing by "refusing to pay a claim without conducting a reasonable investigation with respect to the claim."[30] Therefore, Plaintiff must show that Defendant (1) failed to attempt in good faith to effectuate prompt payment of its claim when the Defendant's liability had become reasonably clear; OR (2) Defendant refused to pay the claim without a conducting a reasonable investigation.[31]

Here, Plaintiff shows both.  Defendant attempts to use the bona fide dispute defense, but to prevail on that defense, Defendant has the burden to establish that it had no reason to know, after a reasonable investigation of the claim, that its position on the claim was unreasonable.[32] There cannot be a bona fide dispute defense without a good faith and reasonable investigation of

---

[28] *Id.* at 55 ("In section 4(10)(a)(ii), the Legislature has drawn a line that defines when an insurer's denial or delay in paying an insurance claim is no longer merely erroneous but in bad faith.").
[29] *Id.*
[30] *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1977).
[31] *See id.*
[32] *See Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 213 (Tex. 1988).

the claim. Here, Defendant cannot meet its burden to show that it conducted a good faith, reasonable investigation of Plaintiff's storm damage claim at issue.

An insurer breaches its duty of good faith and fair dealing and violates section 541.060(a)(2) of the Texas Insurance Code by denying or delaying payment of a claim when the insurer's liability has become reasonably clear.[33] "[E]ven if a bona fide coverage dispute exists, that dispute does not excuse an insurer's failure to conduct a reasonable investigation of a claim."[34] Thus, an insurer will be liable on these claims if it knew or should have known that it was reasonably clear the claim was covered.[35] Determining whether an insurer is liable for these claims depends upon the "reasonableness" of the insurer's conduct in handling the claim.[36] "Reasonableness" is an objective, fact-intensive standard centering on whether a reasonable insurer under the circumstances would have acted in a similar manner.[37]

Moreover, the Texas Supreme Court in *State Farm Fire & Cas. Co. v. Simmons* held that "an insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998) (citing *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997)). In the *State Farm v. Simmons* matter, the Supreme Court found the evidence was legally sufficient to support a finding that the insurer breached its duty of good faith and fair dealing by denying damage under an insured's claim based a biased investigation intended to construct a pretextual basis for denial. *Id.* The Court went on to find that State Farm's own internal documents and testimony from its own experts "established the deficiencies in the company's review of the

---

[33] *See Giles*, 950 S.W.2d, at 55.
[34] *Allstate Vehicle & Prop. Ins. Co. v. Reininger*, No. 04-19-00443-CV, 2021 Tex. App. LEXIS 4760 at *17.
[35] *Giles*, 950 S.W.2d, at 55 (Tex. 1977).
[36] *See Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 818 (S.D. Tex. 2011) (citing *Higginbotham v. State Farm Mut. Automobile Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997)); *see also* Lyons v. Millers Cas. Ins. Co., 866 S.W.2d 597, 601 (Tex. 1993).
[37] *See Viles v. Sec. Nat. Ins. Co*., 788 S.W.2d 566, 567 (Tex. 1990).

[homeowners'] claim." *Id.* The Court found that from these documents, a jury could logically infer that State Farm "did not make a good-faith effort to objectively investigate the [homeowners'] claim, but instead engaged in an outcome-oriented investigation" versus actually reasonably investigating the claim as it should have done. *Id.* at 45.

As in *Simmons*, Defendant's investigation of Plaintiff's claim in this outcome-oriented manner was designed to create a pretextual basis for support of its initial claims position. Under *Simmons*, these actions by Defendant are, on their face, enough to raise a fact issue as to whether Defendant breached its duty of good faith and fair dealing with its insured.  In addition, despite acknowledgment from the independent adjuster that replacement of the roofing system was appropriate due to the state of the roof, Defendant did not share that information with Plaintiff, and instead misrepresented that the minimal amounts it offered for roof repair was sufficient, when Defendant knew it was not.

This, at a minimum, raises a genuine issue on the material fact of whether Defendant performed a reasonable investigation of Plaintiff's loss.   "Reasonableness," of course, is an objective, fact-intensive standard centering on whether a reasonable insurer under the circumstances would have acted in a similar manner.[38] Plaintiff contends that its evidence is irrefutable that the investigation of Plaintiff's damage claim was unreasonable.

Whether Defendant acted in bad faith and is liable for violations under the Texas Insurance Code is a question for the fact-finder, and summary judgment is not appropriate.[39] Because genuine issues of material fact remain regarding Plaintiff's claim for Defendant's breach of the duty of

---

[38] *See Viles*, 788 S.W.2d at 567.
[39] *See Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532 (S.D. Tex. 1999) *see also Universe Life Ins. Co.*, 950 S.W.2d at 56 (holding that whether an insurer acted in bad faith is a question for the fact finder). *Connolly v. Serv. Lloyds Co.*, 910 S.W.2d 557, 561 (Tex. App.—Beaumont 1995, no writ).

good faith and fair dealing, summary judgment on Plaintiff's common-law bad faith claim would be improper and should be denied.

**B.    Plaintiff's Breach of Contract Cause of Action Is Supported By Evidence That All Claimed Damages Are Caused By The Covered March 2019 Loss.**

Defendant argues Plaintiff's breach of contract claim fails because Plaintiff cannot meet its burden under the doctrine of concurrent causation.[40]   However Defendant's assertion is incorrect because here Plaintiff is not required to segregate damages. Plaintiff is only required to segregate damages when (1) there is evidence of a covered loss and excluded loss and (2) Plaintiff cannot produce evidence that all of the damages are caused by a covered event.[41]

Plaintiff need only present evidence that attributes all of the insured's claimed damages to a covered cause of loss to overcome the doctrine of concurrent causation.[42] Here Plaintiff can and has produced sufficient evidence that all of the claimed damages are caused by a covered loss.[43] Plaintiff may satisfy this requirement by showing the damages claimed by Plaintiff in this

---

[40] *See* Dkt. No. 30 at 14–21.

[41] *See Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 576 (Tex. App.—San Antonio 2011, pet. denied) ("[Insured] claimed all the damage itemized in Barton's report was due to hail, while Southland claimed some of the damage was caused by ordinary wear and tear."); *Generation Trade, Inc. v. Ohio Sec. Ins. Co.*, No. 3:18-CV-0434-K, 2019 WL 3716427, at *4 (N.D. Tex. Aug. 6, 2019) (Kinkeade, E.) (confirming "the ***insured must produce evidence supporting one of two alternate theories: (1) evidence that all the claimed loss resulted from a covered event*** or (2) evidence that provides a jury reasonable basis to segregate covered from non-covered loss.") (emphasis added).

[42] *See Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 576 (Tex. App.—San Antonio 2011, pet. denied) (holding plaintiff need not apportion damage because jury determined covered loss caused all damages claimed).

[43] *See Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, No. 3:16-cv-0465-B, 2017 WL 3115142, at *9 (N.D. Tex. July 7, 2017) (Boyle, J.) aff'd, 892 F.3d 167 (5th Cir. 2018) (the Northern District of Texas held: "As discussed below, however, neither these documents nor any other evidence submitted by [the insured] raise a genuine issue of material fact as to ***whether the damage was entirely due to the June 13, 2012 storm*** or from which a jury could reasonably segregate the damages between storms.") (emphasis added); *Generation Trade, Inc. v. Ohio Sec. Ins. Co.*, No. 3:18-CV-0434-K, 2019 WL 3716427, at *4 (N.D. Tex. Aug. 6, 2019) (Kinkeade, E.) (though reversing the judgment based on newly discovered evidence, the Northern District Court confirmed that the concurrent causation doctrine had been properly applied, stating: "[T]the ***insured must produce evidence supporting one of two alternate theories: (1) evidence that all the claimed loss resulted from a covered event*** or (2) evidence that provides a jury a reasonable basis to segregate covered from non-covered loss) (emphasis added); *Starco Impex, Inc. v. Landmark Am. Ins. Co.*, No. 1:19-CV-39, 2020 WL 3442842, at *5 (E.D. Tex. June 3, 2020), report and recommendation adopted, No. 1:19-CV-39, 2020 WL 3440575 (E.D. Tex. June 23, 2020) (the Eastern District granted summary judgment for the insurer upon finding that the evidence cited by the insured did not sufficiently differentiate between covered and non-covered damages, noting that although its expert himself acknowledged there was preexisting damage, "Plaintiff [ ] ***failed to present summary judgment [evidence] establishing what damage was caused***

lawsuit were caused by a covered loss under the Policy such as a hail, wind, and rain storm that occurred during the Policy Period.[44]

Plaintiff's expert James Maxwell Judge ("Maxwell") expressly testified the March 13, 2019 storm caused all of the damages at issue and that storm alone "possessed all of the characteristics to have damaged the roof so that it would require replacement."[45]

Maxwell also testified that the while there was some granule loss to the roof it is a natural occurrence over time and that it was the March 13, 2019 storm alone that caused the damage Maxwell identified in his report.[46] In fact, Maxwell looked at a twelve-month range of dates near the reported March 2019 storm, and eliminated both prior and post-storm events as causes of the damage he witnessed.[47]

During his inspection and review of the weather data, Maxwell found covered hail damage to the roof by finding "multiple recent hail penetrations consistent with the March 2019 storm event."[48]  Maxwell determined the March 2019 hail and wind storm penetrations "damaged the Light Weight Laminate Roof system and allowed water to penetrate the roof covering."[49] Maxwell determined that the result of "[t]hese storm created openings constitute functional damage and have [shortened the] life span of the roof covering and associated components."[50] Maxwell further found evidence of recent wind damage based on the "loose or missing vinyl siding, soffit, and fascia" that he observed that was also determined to be caused by the March

---

*solely by a covered peril*, wholly separate from the previous damages, earlier repairs, and wear and tear dating back to at least 2015.") (emphasis added).

[44] <u>Exhibit 1</u>, Certified Policy at CM 58–59, 110, 132.
[45] <u>Exhibit 2</u>, Judge Deposition Transcript at 45: 9–11.
[46] <u>Exhibit 2</u>, Judge Deposition Transcript at 43:12-44:5.
[47] *See* <u>Exhibit 4</u>, Judge Expert Report at 5–6.
[48] <u>Exhibit 4,</u> Judge Expert Report at 9.
[49] <u>Exhibit 4,</u> Judge Expert Report at 9.
[50] <u>Exhibit 4,</u> Judge Expert Report at 9.

13, 2019 covered wind and hail storm.[51] Finally, in regard to the interior damage at the Property, Maxwell conducted an interior inspection and likewise found water intrusion consistent with the storm-created openings from the March 2019 storm.[52]  Maxwell explained that he was able to link the interior water damage to hail damage occurring above the locations of the water damage based on his interior inspection.[53]

Maxwell backed up his findings with point-by-point photographs of the hail and wind damage to the specific areas he noted in his report, such as:

- wind damage to the fascia:



---

<u>Exhibit 4,</u> Judge Expert Report at 14.

- wind and hail damage to the roof shingles:



<u>Exhibit 4,</u> Judge Expert Report at 18.

- Interior water damage from the storm:



<u>Exhibit 4,</u> Judge Expert Report at 16.

Maxwell concluded all of the damage stated above was caused by the March 2019 hail

and wind storm through his analysis the characteristics of the hail damage and weather analysis.[54]

---

[54] <u>Exhibit 2,</u> Judge Deposition Transcript at 4–6, 42:1–4.

Maxwell was even able to further attribute all of the damage to the March 2019 hail and wind storm by specifically considering and ruling out other causes, such as "wear and tear, foot traffic, improper installation, and older storm events based on [his] personal observations . . . [concluding] the damage did not appear consistent with any cause other than the March 2019 storm event.[55] Maxwell determined the multiple hail penetrations on the roof were "consistent with the storm event reported on 03/13/2019."[56] Further, Maxwell stated that based on the characteristics of the damage he was able conclude the damage was hail.[57]

Based on Maxwell's personal inspection of the Property, weather research, and using his own knowledge and experience, Maxwell found there was a strong correlation between the hail damage at the Property and the hail that fell on March 13, 2019 and determined the "damage to this property is consistent with the Storm Event dated 3/13/19."[58] Maxwell concluded that the damage caused by the March 13, 2019 hail, wind, and rain storm would need to be replaced and prepared an estimate of the damages.[59] Plaintiff provided Defendant with this line-item estimate of claimed damages which Maxwell determined was all caused by the March 13, 2019 storm which would be covered under the Policy.[60]

Plaintiff has shown there is more than sufficient evidence to at least create a genuine dispute of material fact as to whether all of the damages being claimed were caused by the March 13, 2019 hail, wind, and rain storm. Therefore, summary judgment as to Plaintiff's breach of

---

[55] Exhibit 4, Judge Expert Report at 10; Exhibit 2, Judge Deposition Transcript at 42 ("foot traffic . . . would [not] present that way.  It would be a tear and wouldn't cut out a crescent like that. That[ damage in the photo is] like a golf ball hit the roof or a hailstone."); *see also* Exhibit 2, Judge Deposition Transcript at 43 (discussing heat and ventilation issues).

[56] Exhibit 4, Judge Expert Report at 9, *see also* Exhibit 4, Judge Expert Report at 5.

[57] *See* Exhibit 2, Judge Deposition Transcript at 42.

[58] *See* Exhibit 4, Judge Expert Report at 9.

[59] Exhibit 4, Judge Expert Report at 9–10.

[60] *See* Exhibit 4, Judge Expert Report at 23–34; Exhibit 1, Certified Policy at 1–3 (covering "direct physical loss of or damage to Covered Property" including hail, wind, and rain damage).

contract claim would not be appropriate and Defendant's motion for summary judgment on Plaintiff's breach of contract claim should be denied.

## C.     Plaintiff Need Not Prove an "Independent Injury" to Overcome Summary Judgment.

When a breach of contract claim exists and the extra-contractual claims are based upon Defendant's breach of contract for failure to pay benefits owed, an independent injury is not required for the extra-contractual claims to survive.[61] In *Cody v. American Bankers Insurance Company of Florida*, Judge Mary Lou Robinson of the Northern District of Texas held in a first party insurance case that because the plaintiff's breach of contract claim remained an issue, the insurer's summary judgement arguments on the extra-contractual claims failed as a matter of law.[62]

The Texas Supreme Court additionally clarified the independent injury rule in *USAA Texas Lloyds Company v. Menchaca*[63], and the Fifth Circuit cited to it with authority declaring "*Menchaca* repudiated the independent injury rule, clarifying instead that 'an insured who establishes right to receive benefits under an insurance policy can recover those benefits as actual damages under the statute if the insurer's statutory violations causes the loss of benefits.'"[64]

Therefore, Texas recognizes "two paths an insured may take" to establish an insurer caused statutory damages: (1) "a right to receive benefits under the policy" or (2) "an injury independent of a right to benefits."[65] Under the first path, which is at issue here, if an insured "establishes a

---

[61] *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1042 (W.D. Tex. 2020) (clarifying that the independent-injury rule "does not apply where extra-contractual claims are predicated on coverage under the policy or if the damages 'flow' or 'stem' from the denial of the insured's claim.").

[62] *Cody v. American Bankers Ins. Co. of Fla.*, No. 2:14-cv-187, 2015 WL 6460007, at *3 (N.D. Tex. Oct. 21, 2015).

[63] *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018).

[64] *Aldous*, 889 F.3d, at 799 (citing *Menchaca*, 545 S.W.3d, at 495).

[65] *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 872 (Tex. 2021) (orig. proceeding); *USAA Tex. Lloyds v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018).

right to receive benefits under the insurance policy '[it] can recover those benefits as actual damages under [statute] if the insurer's statutory violation causes the loss of benefits.'"[66]

As noted above, Plaintiff's breach of contract cause of action must survive summary judgment because Plaintiff has provided sufficient evidence that all of Plaintiff's claimed damages are from a covered loss. *See supra* Section IV B. And "**because the coverage question remains unsettled, the Court cannot resolve Plaintiff's extracontractual claims**" at summary judgment.[67] As a result, the Court should deny summary judgment on Plaintiff's extracontractual claims.

**D.    Defendant is Not Entitled to Summary Judgment on Plaintiff's Insurance Code and Extra-Contractual Claims.**

Defendant asserts that Plaintiff's extra-contractual claims are based solely on its disagreement with Defendant's coverage determination.  In reality, however, Plaintiff bases its "bad faith" claims on Defendant's misrepresentations and its failure to attempt in good faith to affect a prompt, fair, and equitable settlement as well as its contradictory statements. Defendant failed to properly investigate the damage and misrepresented to Plaintiff that portions of the roofs were not damaged during the storm; failed to observe all of Plaintiff's damage in its investigation; and failed to acknowledge the full damage sustained by Plaintiff's Property caused by a covered loss.  In addition, the Texas Insurance Code further prohibits the Defendant from "failing to state a material fact necessary to make other statements made not misleading."[68]

---

[66] *In re State Farm. Mut. Auto. Ins. Co.*, 629 S.W.3d at 873 (quoting *Menchaca*, 545 S.W.3d at 495); *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) ("[T]o the extent the policy affords coverage, **extra-contractual claims remain viable**.") (emphasis added).
[67] *Valleyview Church v. Church Mutual Ins. Co.*, 2022 U.S. Dist. LEXIS 83144 at *14 (N.D. Tex. May 9, 2022) (emphasis added). *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1977); *Hosp. Operations*, 2021 U.S. Dist. LEXIS 125832, at *16 (noting extracontractual claims survive summary judgment if coverage exists).
[68] Tex. Ins. Code § 541.060(a)(2).

1.    *Defendant refused to honor the representations it made at the time the policy was issued to Plaintiff and additionally misrepresented the condition of the Property.*

Specifically, section 541.060(a)(1) prohibits insurers from "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue."[69]  At the time Plaintiff obtained the policy, prior to Plaintiff's submission of its storm claim, Defendant represented that damages caused by wind and hail would be covered under the policy and that an unbiased investigation would be performed upon the submission of any claim by Plaintiff.[70] However, as shown herein, Defendant refused to honor such representations when the time came to pay hail and wind damages that were covered under the policy.[71]

Defendant additionally failed to properly investigate the damage and misrepresented to Plaintiff that portions of the building were not damaged and that the property was actually "in good overall condition and well maintained."[72] Defendant used this alleged lack of damage and "good overall condition" of the Property as its initial basis for denying replacement of the roof.[73] Defendant later changed its story and claimed that the building was subject to a severe defect such as a lack of ventilation which allegedly caused the massive granular loss that damaged the roof.[74]

These two contradictory statements by Defendant alone show Defendant's investigation of the Property did not produce a bona fide dispute upon which Plaintiff now complains. Rather, these two contradictory statement reveal the fact that either Defendant's initial investigator completely failed to accurately record the condition of the Property thereby prejudicing Plaintiff's Claim, or

---

[69] Tex. Ins. Code §541.060(a)(1).
[70] *See* Exhibit 1, Certified Policy at 1–3.
[71] *See* Dkt. No. 30-2 at Def.'s Appx. 17–18 (stating the building was in good overall condition and well maintained following Defendant's first inspection); Dkt. No. 30-8 at Def.'s Appx. 111 (later claiming the roof was in poor condition due to excess heat caused by a lack of ventilation over the years); *Graber v. State Farm Lloyds*, 2015 U.S. Dist. LEXIS 77361, *18-19 (N.D. Tex. June 15, 2015).
[72] Dkt. No. 30-2 at Def.'s Appx. 17.
[73] *See* Dkt. No. 30-2 at Def.'s Appx. 17; Dkt. No. 30-3 at Def.'s Appx. 20-27.
[74] Dkt. No. 30-8 at Def.'s Appx. 111.

that Defendant simply accepted a third party's contradictory statements without seeking to verify their findings through additional inspections prior to denying Plaintiff's claim.

Defendant both misrepresented how it would handle an insurance Claim made by Plaintiff and as well as misrepresenting the condition of the Property to Plaintiff through its contradictory statements. This alone is sufficient evidence to create a genuine dispute of material fact as to whether Defendant's denial of Plaintiff's claim is merely a bona fide dispute and therefore the Court should deny Defendant's Motion for Summary Judgment.

2.      ***Defendant's substandard investigation resulted in an unequitable settlement of Plaintiff's claim.***

In addition, in violation of section 541.060(a)(2), Defendant failed to effectuate a prompt, fair and equitable settlement, despite acknowledging liability for the claim.[75]  Instead, Defendant performed an unreasonable and substandard investigation, one that was intended to—and did—result in an unequitable settlement of Plaintiff's claims.

Again, Defendant's initial inspection of the Property found that portions of the building were not damaged and that the property was actually "in good overall condition and well maintained."[76] This alleged lack of damage and "good overall condition" of the Property was the basis for limiting damages to only $13,226.89 and denying replacement of the roof.[77] Following Plaintiff's disagreement with Defendant's damages findings Defendant later stated it was denying the majority of damages, including the roof damage,  based on the severe massive granular loss to the shingles in the roof caused by an alleged lack of ventilation.[78]

These two contradictory statements by Defendant show that Defendant's denial of

---

[75] Tex. Ins. Code §541.060(a)(1).
[76] Dkt. No. 30-2 at 17.
[77] *See* Dkt. No. 30-2 at 17; Dkt. No. 30-3 at 20-27.
[78] Dkt. No. 30-8 at 111.

Plaintiff's claim is not the result of a bona fide dispute but rather, at least raises a genuine issue of material fact when viewed in light most favorable to the Plaintiff, that Defendant failed to make an attempt to settle Plaintiff's claim in a fair manner, despite Defendant being aware of its liability to Plaintiff under the Policy, and ultimately, failed to settle Plaintiff's claim in a fair and equitable manner by approving payment and settlement of Plaintiff's claim for a wholly deficient amount.

### 3.    *Defendant failed to promptly provide a reasonable explanation for the basis for excluding covered damage caused by the storm event.*

Not only did Defendant fail to provide prompt, full coverage, Defendant failed to promptly provide Plaintiff a reasonable explanation of the basis for Defendant's denial of the claim—mispresenting that the bulk of the damage was due to "ventilation issues". Defendant's denial was based solely on its investigators' outcome-oriented "inspection" which somehow was unable to find substantial wind damage that was obvious to the naked eye. Defendant's denial letter was merely a regurgitation of their sub-standard investigation and Policy language.

In sum, Defendants violated Section 541.060 in numerous ways, including but not limited to: (1) wrongfully underpaying the Claim; and (2) misleading Plaintiff that its claim was estopped denying and delaying payment on the Claim when Defendant knew or should have known liability was reasonably clear. Whether Defendant acted in bad faith and is liable for violations under the Texas Insurance Code is a question for the fact-finder, and summary judgment is not appropriate.[79] Plaintiff can show acts of bad faith as shown above and will likely need additional evidence as shown below to further support his extra-contractual claims. As a result, Plaintiff respectfully requests that Defendant's Motion be denied.

---

[79] *See Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532 (S.D. Tex. 1999).

**E.      Defendant's Conduct Exemplifies Why the Texas Insurance Code, DTPA, and Bad Faith Statutes were Created.**

Property owners, like Plaintiff, obtain property insurance for one reason, to provide financial assistance to repair their home or business in the event of an unexpected event which causes significant and *expensive* damage to the consumer's property. The average consumer does not have funds available to pay the substantial costs often associated with property damages resulting from a wind, rain, and hailstorm. The reason the DTPA, Bad Faith, and Prompt Payment of Claims laws exists is to prevent the behemoth insurance companies from failing to perform their contractually obligated duties by conducting unreasonable, inadequate, and biased investigations, and drawing out the claims process while withholding funds essential for the consumer's repairs. The claims at issue in these cases—that carriers so brazenly refuse to make payment on for months, or more often these days, years—involve consumer's business that the consumer's livelihood depends on. Consumers should not have to live with holes in their roofs or obtain loans while they wait for someone, like a Court or jury to force the insurer's hand before payment owed under a policy is made.

## VI.      CONCLUSION

Disputed material issues of fact preclude summary judgment. Defendant failed to pay Plaintiff's Claim according to the terms of the Policy based on misrepresentations and intentional misconduct; by failing to fairly evaluate and investigate Plaintiff's claim; and by selling Plaintiff illusory coverage. Construed in its most favorable light, Defendant's conduct could meet the causes of actions Plaintiff alleges, which is enough to support a claim for damages. Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

_/s/Vincent P. Circelli_____

Preston J. Dugas III
State Bar No. 24050189
pdugas@dcclawfirm.com
Vincent P. Circelli
State Bar No. 24058804
vcircelli@dcclawfirm.com

**DUGAS CHEEK & CIRCELLI, PLLC**
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone:     (817) 945-3061
Facsimile:     (682) 219-0761

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on all parties through counsel of record pursuant to the Federal Rules of Civil Procedure on August 29, 2022, in accordance in the manners described below:

G. Brian Odom
State Bar No. 50511840
bodom@zellelaw.com
Lindsey P. Bruning
State Bar No. 24064967
lbruning@zellelaw.com
Kiri D. Deonarine
State Bar No. 24105298
kdeonarine@zellelaw.com

**ZELLE LLP**
901 Main Street, Suite 4000
Dallas, Texas 75202-3975
Telephone:     (214) 742-3000
Facsimile:     (214) 760-8994

**ATTORNEYS FOR DEFENDANT**

_/s/Vincent P. Circelli_____

Vincent P. Circelli