UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:21-cv-00322

**Hilltop Church of The Nazarene,**
*Plaintiff,*

v.

**Church Mutual Insurance Co.,**
*Defendant.*

# ORDER

This is a case about hail insurance. Plaintiff claims that a March 2019 hailstorm caused damage to its property and that its insurer breached the insurance contract, Texas insurance law, and the duty of good faith by denying the claim in part.

Plaintiff retained James Maxwell Judge as an expert witness. Judge toured plaintiff's property nearly three years after the hailstorm, witnessed damage, and searched a storm database for storms occurring in the 2019 calendar year. He concluded that all damage to plaintiff's property was "consistent with the [March 2019 storm] to the exclusion of other potential storm events."

Defendant moves to strike Judge's opinion about damage causation. Defendant then moves for summary judgment on all claims. For reasons discussed below, the court grants both motions.

## Motion to Strike

Plaintiff's expert concluded that all damage to plaintiff's property was caused by one and only one hailstorm. Defendant seeks to exclude that causation opinion as unreliable under Federal Rule of Evidence 702 and *Daubert* because the opinion (1) is unsupported by underlying facts and data contained in an expert report and (2) is the product of an unrefined and unreliable methodology.

Rule 702, as interpreted in *Daubert*, governs the admissibility of expert testimony. *Daubert* provides a non-exhaustive list of factors

for use in evaluating the validity of an expert's methodology.[1] Rule 702 permits expert testimony if four requirements are met. One of those requirements is that the testimony be the product of reliable principles and methods.[2] "[T]he expert's testimony must be reliable at . . . every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[3]

A court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[4] "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."[5] Under *Daubert* the court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts at issue."[6] This gatekeeping requirement "applies to all types of expert testimony, not just 'scientific' testimony."[7] The *Daubert* inquiry is fact specific; it depends on the nature of the issue at hand, the witness's expertise, and the subject of the testimony.[8]

Defendant moves to strike the expert's opinion about causation because it is unreliable and *ipse dixit*. Defendant argues that the opinion is unreliable because the expert's methodology failed to exclude other possible damage-causing storms but nevertheless concluded that only the March 2019 caused any observed property damage.[9] And because the expert's methodology did not fully exclude other

---

[1] 509 U.S. 579, 583 (1993).
[2] The expert must rely on "sufficient facts or data" and "appl[y] the principles and methods reliably to the facts." Fed. R. Evid. 702.
[3] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (internal quotation marks omitted).
[4] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).
[5] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).
[6] *See Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000).
[7] *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 617–18 (5th Cir. 1999).
[8] *Id.* at 618.
[9] *See* Doc. 29.

storms, it was his *ipse dixit* alone that provided the crucial link between his conclusion and underlying facts.[10]

The court agrees. The methodology of plaintiff's expert is unreliable under Rule 702. To begin with, the expert's methodology is unreliable because it does not include a full search of the storm database. The expert toured plaintiff's property in February 2022 and witnessed what is claimed as hail damage. Yet the expert's storm-database search examined only storms in 2019. It did not search 2020. It did not search 2021 or January 2022. Nor did it search before 2019.

That methodology leaves, at a minimum, a 25-month gap of unexamined weather events (in January 2020 – February 2022). A reliable method would have examined those remaining months to identify any other storm and opine on whether it could be excluded as causing the damage.

To survive a *Daubert* inquiry, an expert's methodology must logically account for such a gap.[11] Here, it does not. When asked about why he failed to search for storms outside of 2019, the expert reported that he "felt like" his research "was sufficient to establish the storm event here" and that "the damage did not appear consistent with any cause other than the March 2019 storm event."[12] Yet the expert's report provided nothing beyond conclusory statements about how he arrived at that conclusion. He reported excluding other possible storms based on his observation of the size and age of the hail impacts.[13] But he explained neither the size of hailstone impacts nor his method for ascertaining their age. He reported excluding other possible storms based on the level of water penetration.[14] But he did not explain how he dated the water penetration so as to know

---

[10] *Id.*

[11] *See Knight*, 482 F.3d at 355 ("[T]he expert's testimony must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." (internal quotation marks omitted)).

[12] Doc. 29 at 11.

[13] *See* Doc. 29-1 at 10.

[14] *Id.*

it resulted from damage caused only by the March 2019 storm. He reported excluding other possible storms based on the reports of the church's owners.[15] But his report never discussed their purported comments. The result is that he has provided no way to close the logical gap—other than his *ipse dixit*.

Plaintiff directs the court's attention to cases in which courts approved its expert's methodology.[16] One of these cases is *Gun Barrell*.[17] The *Gun Barrell* expert's report included references to a separate report that itself accounted for all possible hailstorms occurring between the claimed date of loss and the expert's inspection. Here, unlike in *Gun Barrell*, the expert failed to account for 25 months of unexamined possible storms. Plaintiff also refers the court to *Robbins Electra*.[18] But the expert in that case used photographs of the property before and after the storm damage and—crucially—also examined weather data spanning the date of alleged loss and the date of inspection.[19] Here, unlike in *Robbins Electra*, the expert's methodology fails to account for weather data spanning the date of alleged loss and the date of inspection.

For those reasons, the court grants the motion to strike plaintiff's expert opinion because it lacks reliable methodological support for the conclusion that only one storm could have caused Hilltop's property damage "to the exclusion of other potential storm events."

## Summary Judgment

Defendant moves for summary judgment on all claims.

Summary judgment is appropriate when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] The "substantive law will

---

[15] *Id.*
[16] Doc. 32 at 7.
[17] *Gun Barrell Jacksonville LLC v. Depositors Ins. Co.*, No. 6:20-cv-00469, 2021 WL 5154218 (E.D. Tex. Oct. 9, 2021).
[18] *J.A. Lanier & Assocs., Inc. v. Robbins Electra Mgmt., LLC* et al., No. 4:21-cv-00390, 2022 WL 1226966 (E.D. Tex. Apr. 26, 2022).
[19] *Id.* at *4.
[20] Fed. R. Civ. P. 56(a).

identify which facts are material."[21] In showing that there is no dispute of material fact, the movant must identify the portions of pleadings, depositions, answers to interrogatories, admissions, and affidavits that demonstrate an absence of material fact.[22] The nonmovant must respond by setting forth specific facts showing the existence of a genuine issue for trial.[23]

Defendant argues that Hilltop's breach-of-contract claim fails as a matter of law because Hilltop cannot meet its burden of establishing causation.[24] Without the breach-of-contract claim, defendant argues, all extracontractual claims fail as a matter of law.[25]

### *Breach of Contract*

The elements of breach of contract in Texas are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[26] An insured may recover on an insurance contract only if it establishes coverage under the terms of the policy.[27] When covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered perils.[28] That is known as the doctrine of concurrent causes.[29] Under the doctrine, the insured bears the burden of segregating damage attributed to the covered peril.[30]

---

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[22] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[23] *See Regas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 2001).
[24] Doc. 30 at 14–27.
[25] *Id.* at 28–31.
[26] *Burbridge v. CitiMortgage, Inc.*, 37 F.4th 1049, 1051 (5th Cir. 2022).
[27] *See, e.g.*, *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015); *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 400 (Tex. 2016); *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).
[28] *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300 (Tex. App. 1999).
[29] *Id.*
[30] *See Id.* at 302–03 (Tex. App. 1999) (citing *Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507–08 (Tex. App.—San Antonio 1994, writ denied)); *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Defendant argues that plaintiff's property damage resulted from a variety of sources: long-term wear and tear, age-related deterioration, faulty or inadequate repair, construction or renovation, and multiple non-covered weather events. Defendant specifically blames rooftop granule loss on excess heat below the shingles caused by inadequate venting. Defendant also argues that plaintiff's roof shingles reached the end of their lives. According to defendant, granule loss combined with inadequate venting is enough to show that there is evidence of contributing causes of loss besides any hail damage that occurred.

When an insurer introduces other plausible causes of damage, the burden shifts to the insured to introduce evidence to exclude those causes.[31] Yet plaintiff has not offered any evidence about inadequate venting. On the contrary, plaintiff's expert conceded that he would "have to have an engineer to determine whether the ventilation it has is adequate."[32] Nor does plaintiff offer any evidence suggesting the roof shingles were not aged. Again on the contrary, plaintiff's expert reported that granule loss from the shingles was "just a natural process of the aging of the shingles."[33] These are plausible causes of damage that are not covered by the insurance policy. Having failed to *exclude* those damages, plaintiff must now *segregate* them. But plaintiff does not do this. Instead, it argues that segregating damages is unnecessary. Plaintiff argues that it need only segregate damage when (1) there is evidence of a covered loss and

---

[31] *See, e.g.*, *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 193 (5th Cir. 2011) (finding summary judgment affidavit to be too speculative when doctor opined that plaintiff's disorders could be caused by radiation exposure and doctor made no effort to exclude alternative causes suggested by opposing expert with reasonable certainty); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 559 (Tex. 1995) (holding that an expert's "failure to rule out other causes of the damage renders his opinion little more than speculation"); *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F.Supp.2d 805, 837 (S.D. Tex. 2013) (excluding mechanical engineer's conclusion regarding cause of seal leakage when engineer failed to rule out other possible causes of leakage); *see also McNabney v. Lab'y Corp. of Am.*, 153 F. App'x. 293, 295 (5th Cir. 2005) (emphasizing that, to admit testimony under Rule 702, medical causation experts must have considered and excluded other possible causes of injury).

[32] Doc. 29-2 at 10.

[33] *Id.*

excluded loss and (2) it cannot produce evidence that all damage was caused by a single event. Plaintiff argues that it has produced evidence that all damage was caused by a single event.

But plaintiff has not provided this evidence. The only putative evidence it offers to support a finding that all damage was caused by a single event is the now-stricken expert opinion. Without that expert opinion, plaintiff no longer has any evidence that all damage was caused by a single event. So plaintiff must segregate its claims to meet its burden under Texas law.

Plaintiff has not done so. As a result, a jury could not reasonably apportion the harm resulting from covered and excluded perils even if it found that plaintiff's property was damaged by hail. Because plaintiff failed to demonstrate that a single event caused its property damage and because it failed to segregate its damage, the court grants summary judgment on plaintiff's breach of contract claim.

*Extracontractual Claims*

Plaintiff also argues that defendant violated the Texas Insurance Code, the Texas Deceptive Trade Practices Act, and the duty of good faith.[34]

An insured generally cannot recover benefits for an insurer's statutory violations if the insured does not have a right to those benefits under the policy.[35] Because plaintiff's breach of contract claim fails as a matter of law, plaintiff cannot establish that it has a right to benefits under the policy. And although Texas law sometimes permits insureds to assert extracontractual claims if the insured can demonstrate injury independent of the right to receive benefits,[36] plaintiff did not claim any independent injuries.[37] Instead, it staked its extracontractual claims on a breach-of-contract theory.[38]

---

[34] *See* Doc. 15.
[35] *USAA Texas Lloyds Co. v. Menchahca*, 545 S.W.3d 479, 490 (Tex. 2018).
[36] *See In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 872 (Tex. 2021).
[37] *See* Doc. 34 at 19 ("Texas recognizes 'two paths an insured may take' to establish an insurer caused statutory damages: (1) 'a right to receive benefits under the policy' or (2) 'an injury independent of a right to benefits.' Under the first path, *which is at issue here.*" (emphasis added)).
[38] *See id.* at 20.

- 8 -

Because plaintiff cannot demonstrate a right to benefits under the policy or any independent injuries, the court grants summary judgment on its extracontractual claims.

* * *

For the above reasons, the court grants defendant's motion to strike and its motion for summary judgment. All other motions are denied as moot. Final judgment will issue forthwith.

*So ordered by the court on December 20, 2022.*

_____
J. CAMPBELL BARKER
United States District Judge